A. W. ACHESON v. M. H. STEVENSON ET. AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY, IN EQUITY.

Argued October 23, 1889—Decided January 6, 1890.

(*a*) A deed conveyed a town lot, adjoining other lands of the grantor, with the habendum: "To have and to hold the said premises, . . . . . without, however, the right to drill or mine for petroleum, carbon oil, or natural gas, which right is not intended to be conveyed, but is forbidden to both parties hereto."

(*b*) On a bill filed by the grantor to restrain the grantee from drilling for oil on the lot conveyed, it appeared from the affidavits read that the grantor himself had put down one or more producing wells, on property still remaining in his ownership, but adjoining that he had conveyed to the defendant.

1. In such case, the court below finding that the plaintiff's equity was questionable, by reason of his own acts in drilling oil-wells near the lot conveyed, and that the injury was not irreparable on final hearing, an order refusing to grant a preliminary injunction on plaintiff's motion would not be reversed.

Before STERRETT, GREEN, CLARK, MCCOLLUM and MITCH-ELL, JJ.

No. 215 October Term 1889, Sup. Ct.; court below, No. 606, C. P. in equity.

On August 15, 1889, a bill in equity was filed by A. W. Acheson against M. H. Stevenson, J. Adolph Schmitz, Effie B. Schmitz, John Burns and James M. Hughes, which averred, in substance:

1, 2. That on June 21, 1887, the plaintiff sold and conveyed to Mrs. Effie B. Schmitz a lot of ground fronting 60 feet on Prospect avenue and extending back 198 feet to a private alley, which alley for its whole length adjoined other lands still owned by the plaintiff, the conveyance containing the following habendum: "To have and to hold the said premises, with all and singular the appurtenances, unto the said party of the second part, her heirs or assigns, to the only proper use, benefit and behoof of the said party of the second part, her heirs and assigns forever. Without, however, the right to drill or mine

for petroleum, rock oil, carbon oil, or natural gas, which right is not intended to be conveyed but is forbidden to both parties hereto." A copy of said conveyance was attached as a part of the bill and marked exhibit A.

3. That since executing and delivering the said deed, the plaintiff had executed and delivered to Gibson & Giles an oil- and gas-lease on an out-lot near the lot described in the preceding paragraph, containing about four or five acres, upon which said Gibson & Giles had completed an oil-well which was producing oil in large quantities.

4. That the defendants, with full knowledge and notice of the restriction contained in said deed to Mrs. Effie B. Schmitz, against the protest of the plaintiff, and in violation of the restriction in said deed, were proceeding to drill an oil- or gas-well within 30 feet of the lands of the plaintiff and within 200 feet of the well mentioned in paragraph 3 of the bill.

Upon the foregoing averments the plaintiff prayed for relief: 1. That the defendants make answer. 2. That they make full disclosure of all parties interested in the operations complained of. 3. That by preliminary and thereafter by perpetual injunction the defendants, etc., be restrained and enjoined from proceeding to drill or mine for oil or gas in or upon the premises described in the bill. 4. For an account. 5. For further relief.

At the hearing of the motion for a preliminary injunction, on August 21, 1889, affidavits were read by the plaintiff and by the defendants, and on August 28th, the court, McILVAINE, P. J., filed the following opinion and decree:

The plaintiff's right to a preliminary injunction in this case depends on three things, to wit: 1. On the existence and character of the restriction contained in his deed to Mrs. Effie B. Schmitz. 2. On the violation by the defendants of the provisions of that restriction, and 3. On the question whether the plaintiff " by his own conduct has deprived himself of the right to equitable interference for the prevention of the breach of the restriction contained in this deed."

Let it be conceded, as we think it must be, that the words, " Without, however, the right to drill or mine for petroleum, rock oil, carbon oil, or natural gas, which right is not intended

to be conveyed but is forbidden to both parties hereto," as found in the habendum of the plaintiff's deed to Mrs. Schmitz, constitute a lawful restriction, and that the defendants have no right under this deed to drill an oil- or gas-well on the premises therein conveyed; and let it also be further conceded, as it must be, that the defendants are engaged in drilling such a well on the lot in question, still the plaintiff cannot invoke the aid of a court of equity, and successfully ask that the defendants be enjoined from so doing, unless it appear that he has carried out his part of the contract or agreement which resulted in placing the restriction upon the use and enjoyment of the lot conveyed. And here is where the contest in this case arises. As to the purpose of this restriction, or why it was inserted in the deed, the deed itself is silent. And we must turn to the affidavits which were read at the hearing, for information on this branch of the case.

From the affidavits of the plaintiff it appears that, some time ago, he laid out a plan of lots to be known as the " Acheson Addition " to the borough of Washington; that the lot in question is in this addition; that the clause in Mrs. Schmitz's deed, which we have quoted, was intended as a reservation of the oil and natural gas; that in the sale of the lots in this addition it was always his intention to reserve the oil and gas, and that he in no way bound himself not to mine the oil under these lots by locating wells on ground which was not properly a part of the addition.

The defendants claim that the clause in the deed referred to was not intended as a reservation of the oil and gas, but as a restriction to be placed in all the deeds for the benefit of all the lot-holders in the addition, the object being to secure to them dwelling places free from the annoyance of oil- and gas-wells, or, as Prof. Schmitz poetically expresses it, "a quiet rural retreat." We quote from the affidavits filed by the defendants in support of this claim:

Prof. Henry Woods, who purchased one of these lots, avers "that the judge told him, when the restriction was put in his deed, that the object of it was to protect the lot-holders against the drilling of oil- or gas-wells;" says he, "we want this for a nice, quiet place for residence."

Prof. W. C. McClelland avers that when he received his

deed it was explained to him, "that the covenant was not intended as a reservation of the oil and gas, for they did not believe there was any oil or gas there; but that it was intended for the mutual protection of lot-holders against each other; . . . . . both Mark and the judge told me that no well would be put down on the addition."

M. H. Stevenson, Esq., avers that the plaintiff said to him, when he accepted his deed, "that the covenant against drilling was for mutual protection of the lot owners against each other, and' that he would not sell any lots in the addition without having it in the deed. He also mentioned the fact that he lived out there himself, and that he would not have any well around there anywhere."

T. F. Birch, Esq., avers that when he bought a lot from the plaintiff "he explained that they wanted that neighborhood for a quiet place of residence, and that there were to be no wells drilled around there; that the restriction was for the mutual protection of the lot owners, and to protect them from the annoyance of oil- and gas-wells. The Achesons owned other lots there, and I understood that they were no more at liberty to drill than anybody else."

Prof. Adolph Schmitz avers that the plaintiff told him, when he agreed to the restriction in his wife's deed, "that he wanted the restriction in all the deeds in this addition; that he did not want any oil-wells in that neighborhood; he wanted this for a quiet residence place and he would not have 'any oil-wells around there anywhere."

Mrs. Effie B. Schmitz says, "my husband attended to the purchase of my lot. While we were building our house the judge was over, and the oil business came up some way in conversation. He waved his hand toward the mansion place where the Rev. Hamilton lives, and said that he would not have any wells out there at all; he would not be bothered with the annoyance."

Geo. B. Darrah avers that, "in answer to his objection to the restriction in his deed, he (M. C. Acheson, Esq.), in the presence of the plaintiff, said that they had laid that land out into building lots and wanted this neighborhood for a nice, quiet place of residence; that this restriction was intended for mutual protection and would be in all the deeds; 'of course you

Opinion of Court below.

do not want anybody to drill so as to annoy you, and so you must be bound not to drill so as to annoy us.' He explained that the restriction was not intended for a reservation of the oil and gas, for, says he, the right is forbidden to either party, but that it was merely intended for the protection of people who might own lots in that addition." Mr. Darrah further avers, "that he saw the plot of the addition; that it extends from Mark Acheson's house clear around the road to the property of Rev. Ross Stevenson. The mansion house, or Hamilton lot, was included in the plot just the same as any other lot, and the judge told me that he had offered it for sale. Both the wells back by Hamilton's house are on the addition, as it was when shown to me, and are a violation of the representations on which they got me to accept the restriction."

From these affidavits the defendants claim, as we have already said, that when the plaintiff put the lots in Acheson's Addition in the market, he made it a general condition in the sale thereof that no wells would or should be drilled on the lots in the addition for oil or gas, the object being to secure a building site that would attract those who preferred a residence in "a quiet rural retreat," rather than the ownership of a lot where they and their neighbors could engage in the business of drilling oil-wells; in other words, that he dedicated and disposed of these lots solely for building purposes, and that he has violated this general agreement made with the purchasers of those lots by drilling two wells on the Hamilton lot, which is in the addition, and by drilling a well on the Gibson & Giles lot which is in the immediate neighborhood; that he has done the thing, the effect of doing which has destroyed those very advantages which the clause of restriction was intended to maintain, and now seeks to use this restriction to protect him in doing that which he agreed not to do. It is unnecessary at this stage of this proceeding to decide that the evidence produced by the defendants is sufficient in law to sustain this claim set up by them. It is certainly sufficient to raise a dispute, to make the plaintiff's equity questionable; and, under such circumstances, an injunction ought not to be granted until the parties can be heard before a master. We need hardly to cite authorities to sustain this position.

Justice THOMPSON, in Mammoth Coal Co.'s App., 54 Pa.

188, says: "A preliminary injunction ought not to be granted unless the plaintiff show a clear right and urgent danger of irreparable injury." "As a preliminary injunction is in its operation somewhat like a judgment and execution before trial, it is only to be resorted to from a pressing necessity to avoid injurious consequences which cannot be repaired under any standard of compensation." In Kerr on Injunctions, 430, et seq., Text Book Series, we find this language, which has a direct bearing on this application: "The conduct of the party who seeks the aid of the court will be taken into consideration upon an application for an injunction. A man who comes to the court, to restrain the breach of a covenant or contract, must be able to show that he comes with clean hands. . . . . He cannot have relief unless it appear that he has actually carried out, as far as in him lies, his own part of the agreement. . . . . A covenantor . . . . . whose own acts have been inconsistent with the covenant . . . . . cannot come to a court of equity to have the covenant or contract enforced. Thus; where the leases of an estate contained covenants to build on a uniform plan, and the landlord let loose some of his tenants from the obligations of the covenant, the court would not interfere to prevent a similar infringement by other tenants. Nor would the court restrain the erection of buildings contrary to a covenant, where the plaintiff had himself erected buildings, the effect of which was to destroy those very advantages which the covenant was intended to maintain. Nor will the court enforce a restrictive covenant by injunction, on the application of a man who has wilfully allowed it to be broken by other persons who were bound to the same restrictive covenants."

In conclusion we may say that the refusal to grant a preliminary injunction cannot irreparably injure the plaintiff. If on final hearing he succeeds, he has a perfect standard by which to estimate the damage. The oil that the defendants may mine will go into the pipe-lines, and an account thereof will be kept by a third disinterested party. While, on the other hand, the granting of a preliminary injunction, should the plaintiff's bill be dismissed on final hearing, might irreparably injure the defendants, as there is no means of estimating how much of their oil in the meantime may have been taken out through the plaintiff's neighboring wells. "An injunction will not be

granted where it will be productive of greater injury than a refusal of it, and the damages are susceptible of compensation at law: " Richards's App., 57 Pa. 105 ; Harkinson's App., 78 Pa. 196.

And now, August 28, 1889, this cause came on to be further heard, on the plaintiff's application for a preliminary injunction, and was argued by counsel; whereupon, upon due consideration thereof, it is ordered, adjudged and decreed that the preliminary injunction prayed for be and the same is hereby refused.[2]

The foregoing decree having been entered, the plaintiff took this appeal,[*] specifying that the court erred: 1. In not granting the preliminary injunction prayed for. 2. In making the decree refusing the preliminary injunction.

*Mr. R. W. Irwin* (with him *Mr. J. W. Donnan* and *Mr. Alvan Donnan*); for the appellant.

Counsel cited: Whitney v. Railway Co., 11 Gray 359 ; United States v. Gear, 3 How. 120 ; Merced Mining Co. v. Fremont, 7 Cal. 317 (68 Am. Dec. 262) ; Smith's App., 69 Pa. 479 ; Denny v. Brunson, 29 Pa. 382 ; Allison's App., 77 Pa. 225 ; High on Injunctions, 4 Sandf. Ch. 587 ; Waterman on Spec. Perf., § 109 ; Tipping v. Eckerly, 2 K. & J. 270 ; Taylor on Ev., § 316 ; Best on Ev., § 255 ; Phillips v. Meily, 106 Pa. 536 ; Murray v. Railroad Co., 103 Pa. 37 ; Sylvius v.

---

[*] The certiorari upon the foregoing appeal was issued on September 10, 1889. On September 24th, an amended bill was filed by leave of the court below, and on September 25th, the plaintiff, upon his amended bill, the affidavits already filed, and additional affidavits then presented, renewed his motion for a preliminary injunction, and prayed that a time be fixed for the hearing thereof. The same day, the court below overruled the motion `and refused the hearing prayed for, until the appeal already in the Supreme Court was disposed of by that court. Thereupon the plaintiff took an appeal to No. 245 October Term 1889, Sup. Ct., assigning the overruling of his motion for error. On October 23, 1889, the defendants filed in the Supreme Court a motion to quash this second appeal upon the grounds, (1) that the record showed no decree by the court below from which an appeal lay ; (2) that the record showed no certificate by the judge of the court below such as is required by § 2, act of June 12, 1879, P. L. 177. On October 24th, after argument, the appeal was quashed ; Mr. Justice MITCHELL, dissenting.

Kosek, 117 Pa. 75; Null v. Fries, 110 Pa. 529; Thomas v. Loose, 114 Pa. 46.

*Mr. David Sterrett* (with him *Mr. M. H. Stevenson*), for the appellees.

Counsel cited: Shep. Touch., *75, *77, *80, *87, *89; Kister v. Reeser, 98 Pa. 5; Caldwell v. Fulton, 31 Pa. 478; Kirkham v. Sharp, 1 Wh. 333; Klaer v. Ridgway, 86 Pa. 534; 2 Bl. Com., *20; Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 246; Grubb v. Guilford, 4 W. 224; Chetham v. Williamson, 4 East 476; Shoenberger v. Lyon, 7 W. & S. 194; Saltonstall v. Little, 90 Pa. 422; Boults v. Mitchell, 15 Pa. 371; Maule v. Weaver, 7 Pa. 331; 3 Bl. Com., *156; 2 Washb. Real P., 25; Kieffer v. Imhoff, 26 Pa. 438; Dark v. Johnston, 55 Pa. 164; 3 Kent. Com., *435; Pierce v. Keator, 70 N. Y. 419 (26 Am. Rep. 612); Peck v. Conway, 119 Mass. 546; Huff v. McCauley, 53 Pa. 210; Yeakle v. Jacob, 33 Pa. 376; Post v. Pearsall, 22 Wend. 425; Wallace v. Baker, 1 Binn. 617; Spencer v. Colt, 89 Pa. 320; Iddings v. Iddings, 7 S. & R. 113; Oliver v. Oliver, 4 R. 143; Hurst v. Kirkbride, 1 Binn. 616; Hultz v. Wright, 16 S. & R. 345; Lyon v. Huntingdon Bank, 14 S. & R. 283; Parke v. Chadwick, 8 W. & S. 98; Renshaw v. Gans, 7 Pa. 117; Rearich v. Swineheart, 11 Pa. 240; Garrigues v. Harris, 17 Pa. 344; Deakers v. Temple, 41 Pa. 242; Richards's App., 57 Pa. 105; Harkinson's App., 78 Pa. 196; 2 High on Inj., § 1696.

PER CURIAM:

In the class of cases to which this appeal belongs, we purposely abstain from any expression of opinion as to the merits of the case, for the reason that the facts are not fully before us. The only question, now presented, is, whether the preliminary injunction should have been granted. As at present advised, we are not satisfied that the court below erred in refusing to grant it.

> Decree affirmed and appeal dismissed at appellant's costs.

Mr. Justice MITCHELL dissented.