## NEWELL v. LAFARELLE.   (No. 1134.)

(Court of Civil Appeals of Texas. El Paso. Nov. 18, 1920. Rehearing Denied Dec. 16, 1920.)

**1. Appeal and error ☞390—Appeal bond identifying case and stating judgment, amendable, though payable to deceased plaintiff.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2104, in suit wherein plaintiff died and his executrix was substituted, a defendant's appeal bond, which identified the case, stated the judgment rendered, and was defective only in that it was made payable to the deceased plaintiff, sufficiently disclosed attempt to comply with the statute, and is amendable as purporting to be an obligation to indemnify plaintiff executrix against loss by the appeal.

**2. Appeal and error ☞395 — Defective bond sufficient to give court jurisdiction.**

Since the enactment of Vernon's Sayles' Ann. Civ. St. 1914, art. 2104, authorizing the amendment of any appeal bond however defective, purporting to be an obligation to indemnify appellee, a bond, whether defective in form or substance, is sufficient to give the appellate court jurisdiction.

**3. Brokers ☞40 — Showing broker efficient cause of sale does not create agency.**

Simply to show that a broker is the efficient cause of consummation of a sale does not show an agency to sell.

**4. Brokers ☞8(3)—Evidence insufficient to sustain finding of employment to sell mine.**

In an action for commission on sale of a mine, evidence held insufficient to sustain the trial court's finding that the defendant, against whom judgment was rendered, employed plaintiff's decedent to procure purchaser for the property, or finding there was an implied contract between such defendant and plaintiff's decedent that reasonable compensation would be paid.

Appeal from District Court, Brewster County; Jos. Jones, Judge.

Suit by James Lafarelle against F. E. Gillett, A. A. Newell, and another, wherein, after plaintiff's death, his widow, Concepcion Lafarelle, as executrix, intervened. From judgment for plaintiff executrix, defendant Newell appeals. Reversed and remanded.

Turney, Burges, Culwell, Holliday & Pollard, of El Paso, for appellant.

I. L. Martin, Jr., of Alpine, and Bruce W. Teagarden and W. B. Teagarden, both of San Antonio, Tex., for appellee.

WALTHALL, J. This suit was filed by James Lafarelle against F. E. Gillett, Alfred A. Newell, and T. M. Wilson, executor of the estate of James Norman, deceased, and the estate of James Norman, deceased, to recover a commission of $1,250 and interest thereon on the sale of what is known as the Marfa-Maricopa Mining Company property, situated in Brewster county. Pending the suit James Lafarelle died, and his widow, Concepcion Lafarelle, as executrix, intervened, adopted the allegation of the petition, and prosecuted the suit to judgment. The petition asserted liability on the part of defendants as partners, and against each one individually upon grounds stated in detail, and upon express and implied contract, and 'to the effect that the property was listed with James Lafarelle for sale, and it was agreed that if Lafarelle would procure a purchaser for the property they would compensate him for his services.

Defendants filed separate answers, in substance denying partnership, pleaded the general issue, and pleaded specially that James Lafarelle was never employed in any manner to negotiate a sale of the property described; denied any agreement to pay commission for negotiating a sale of said property; alleged that no sale of said property was made by James Lafarelle or through his aid, and that what may have been done by him was on his own initiative and without any promise of reward from any of defendants.

The issues were tried before the court without a jury, resulting in a judgment in favor of appellee against A. A. Newell only, and on an implied contract to pay a reasonable compensation for services rendered in effecting a sale of the property, from which judgment appellant, Newell, alone gave notice and prosecutes this appeal. At appellant's request the court made findings of facts and conclusions of law. We will state only such findings of the court as seem to have bearing upon the issues presented between Newell and James Lafarelle.

The court found that the Marfa-Maricopa Mining Company, by authority of its stockholders, placed all of its properties in the hands of James Norman as trustee with power to handle, manage, sell, and distribute the net proceeds among the stockholders; that Newell was employed by James Norman as general manager of this property to operate same, and to make a sale of the property under an agreement whereby Newell was to have one-third of the output of the mine while he operated it, and to have a per cent. of the selling price of the property when sold, and that Newell was so acting for some two years previous to and at the time of the sale; that Newell under the agreement was employed and authorized to find a purchaser for the property and make a sale of it as agent

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the owners, for which he was to receive, and did receive, 10 per cent. on the first $10,000 of the purchase price and one-third of the $15,000 remainder, making a total compensation of $6,000 paid Newell for making the sale; that James Lafarelle was an experienced prospector and mining man, and that his chief business and occupation for many years had been to prospect for and develop mines and to sell mines, and had so operated in Brewster county for more than 20 years, and this was well known to Newell, who had personally known Lafarelle for 15 years; that Newell employed James Lafarelle to procure a purchaser for said property, and there was an implied contract between them that reasonable compensation should be paid him for his services; Lafarelle, with the knowledge of Newell, procured the purchaser, F. M. Dancy, to whom the property was sold by Newell and Norman; that 5 per cent. ($1,250) of the sale price ($25,000) is a reasonable compensation to Lafarelle; that Newell knew that Lafarelle was procuring a purchaser for the property, and under the facts there was no reason for Newell to assume or believe that Lafarelle was acting gratuitously, or for any other purpose or motive than for reasonable compensation from him or the owners of the property for his services.

The court concluded that an implied contract was established between Newell and Lafarelle; that Lafarelle should have reasonable compensation for his services in procuring a purchaser for the property; that said implied contract should be discharged by Newell.

Upon the court's findings judgment was rendered for appellee for $1,250. Appellee has filed a motion to dismiss the appeal on the ground that no appeal bond, such as the law requires, was ever filed to support the appeal, the bond filed being made payable to James Lafarelle alone, he being dead at the time of the execution of the bond. It is insisted that the appeal bond filed, being made payable to Lafarelle, a deceased person, is void, and confers no jurisdiction upon this court. Appellee refers us to Railway Co. v. Neal, 65 S. W. 49; Terry v. Schultz, 38 S. W. 374; Simmang v. Cheney, 155 S. W. 1199; Walter Box Co. v. Blackburn, 157 S. W. 220; Clark v. Lowe, 58 Tex. Civ. App. 576, 124 S. W. 733; Dunnagan v. East Texas Colonization Co., 198 S. W. 357, and other cases, decided since the enactment in 1905 of article 2104, V. S., authorizing amendment of bonds on appeal, when "it shall be determined by the court to which appeal is taken that such bond or recognizance is defective in form or substance."

[1, 2] We think, however, that the filing of the appeal bond sufficiently discloses an attempt to comply with the statute. It is in all matters formal, identifies the case in which it is filed, states the judgment rendered, and is defective in that it is made payable to James Lafarelle. The statute referred to permits the amendment of any bond, however defective, provided it purports to be an obligation to indemnify appellee against loss by the appeal. Oliver v. Lone Star Cotton J. & L. Ass'n, 136 S. W. 508, and Mitchell v. Hancock, 196 S. W. 694; Sparkman v. Stout, 212 S. W. 526. In Hugo v. Seffel, 92 Tex. 414, 49 S. W. 369, and in Kolp v. Shrader, 168 S. W. 464, it is held that since the enactment of the above article of the statute, a bond, whether defective in form or substance, is sufficient to give the appellate court jurisdiction.

It is ordered that the motion to dismiss this cause by reason of the insufficiency of the appeal bond be overruled. The bond heretofore given being defective in the matters pointed out in the motion, it is further ordered that appellant be permitted, within 10 days next hereafter, to file in this court a sufficient bond on appeal to be taken and approved by the clerk of this court. The costs of taking and filing the amended bond, as well as the taking and filing the defective bond, is taxed to the appellant.

By the first six assignments and the propositions thereunder, appellant questions the sufficiency of the evidence to justify and sustain the judgment rendered against him. The points of contention, summarized, are that the evidence is wholly insufficient to show such contract, either express or implied, between himself and James Lafarelle as to constitute Lafarelle his agent in the sale of the property, or to justify the finding that the contract for the payment of a commission on the sale of the property existed. We find nowhere in the petition an allegation in which appellee alleges that the letter created a contract of agency between Newell or any of the defendants in the suit, and James Lafarelle, as stated by appellant in the statement under the first assignment. In the pleading the letter was referred to and used as an exhibit to show the price at which the property could be sold, the description of the property, that is, what was included in the proposition for its sale, and the reservations made.

[3, 4] There is not found in the record of the evidence any expression direct or indirect, of an intention on the part of Newell to engage the services of Lafarelle in making the sale of the property, or of assisting Newell in making the sale; nor is there a request by either Newell or Lafarelle that the services of Lafarelle be used in finding a purchaser or the making a sale, or in assisting in making a sale of the property; nor is there the slightest intimation by Newell, or any of the parties, that a commission should be paid to Lafarelle in the event he should find a purchaser, or in the event of a sale

of the property; nor is there found in the evidence any expression from Newell or the other defendants constituting Lafarelle an agent of Newell, or of any or all of the defendants, in making a sale of the property. Simply to show that one is the efficient cause of the consummation of a sale does not create an agency. Fordtran v. Stowers, 52 Tex. Civ. App. 226, 113 S. W. 632. One has no authority to act as an agent of another except by virtue of some act of the other amounting to an appointment as an agent. The evidence does not show that when the sale of the property was finally made to Dancy by Norman and Newell that either of them knew that he had been procured as a purchaser by Lafarelle, so that it might be said that they, knowing the services rendered by Lafarelle in securing a purchaser in the person of Dancy, accepted his services. The evidence does not disclose that any of defendants, prior to the sale, knew that Lafarelle did anything toward effecting a sale of the property. The only thing they knew was the writing of the letter to Lafarelle by Newell. The evidence, substantially, is to the effect that: The property was put in the hands of Newell to operate and sell. He was offering the property for sale. Others than Lafarelle were making efforts to sell the property. Newell, having known Lafarelle for about 16 years, and knowing that Lafarelle was a mining man, a prospector for minerals and superintendent of mines in the county in which the property was situated, and that Lafarelle was familiar with the property, wrote Lafarelle the letter found in the record, fully describing the property in all of its details, stating the price and the terms on which the property could be sold. Lafarelle, through correspondence, found a purchaser in Atlanta, Ga., in the person of F. M. Dancy. Dancy testified that his attention was first called to the fact that the property was for sale by a letter from Lafarelle, in which was inclosed the letter from Newell to Lafarelle. Dancy testified that he did not recall that he had heard from other sources than Lafarelle that the property was for sale. On inquiry Dancy learned, through Dr. Udden, state geologist, that Lafarelle had been foreman of the property, and could give information about it. Dancy came to Brewster county and made the actual negotiations and purchase from Newell and James Norman. The letter written to him by Newell shows that

he had the consent of Newell to make a sale. The above statement is about as far as the evidence goes in establishing the agreement pleaded. In Dunn v. Price, 87 Tex. 318, 28 S. W. 681, Dunn, the owner of the real estate, told Price, the real estate broker, that he would take $30,000 for the property. Price asked Dunn if he was in earnest, and Dunn said in reply that he meant business, and, if Price did not think so, let him bring a purchaser. In a very short time after the above conversation Price brought a purchaser able, ready, and willing to buy at the price named, and so expressed himself. Dunn declined to sell, and the suit was for a commission. The jury found in favor of Price in the suit for commission. In that case, as in this, there was no request by Dunn that Price find a purchaser. In that case, as in this, the owner stated the price at which the property could be purchased. In that case, the Supreme Court said:

"There was no express promise to pay anything in this case; nor do we think that one can be clearly implied from the language used. If one requests another to perform a service for him, the law will ordinarily imply a promise to compensate him for the work. But where one, having property to sell, tells a broker that, if he will bring him a purchaser, he will sell at a certain price, it is by no means certain that he means to imply a promise to pay a commission. The broker may get his compensation from the purchaser."

The court concluded that the language used did not constitute an offer to pay a commission. All that we can deduce from the evidence is that Newell offered to sell the property at the price stated. The evidence does not show that Newell requested Lafarelle to sell the property at the price stated. We have concluded that there is no evidence in the record to sustain the trial court's finding that Newell employed Lafarelle to procure a purchaser for the property; that there is no evidence in the record to sustain the finding that there was an implied contract between Newell and Lafarelle that reasonable compensation would be paid him for his services.

The conclusion we have reached as to the disposition to be made of the case renders it unnecessary to dispose of the seventh, eighth, and ninth assignments.

For reasons stated, the case is reversed and remanded.