## FOSTER et ux. v. BUNTING et al.
### (No. 12160.)

Court of Civil Appeals of Texas. Fort Worth.
June 8, 1929.

Billingsley & Billingsley, of Fort Worth, for appellants.

Phillips, Trammell, Chizum & Price and Dillard Estes, all of Fort Worth, for appellees.

CONNER, C. J. This suit was instituted by J. E. Foster and wife, L. B. Foster, on the 4th day of June, 1927, against Lucile Bunting, Ida M. Bunting, the Hi-Mount Land Company, a corporation, J. R. Wattam, and H. M. Anderson, to restrain the erection of a building, the construction of which was threatened by Lucile and Ida May Bunting, in violation of certain building restrictions. The Hi-Mount Land Company, J. R. Wattam, and H. M. Anderson were later dismissed, and need not be further referred to.

The plaintiffs alleged that they were seized in fee of lot 12 in block 1, Bunting's addition to Hi-Mount, an addition to the city of Fort Worth; that defendants Lucile Bunting and Ida May Bunting were seized in fee of lot 13 in block 1 of said addition; that plaintiffs and defendants derived title to said lots through defendant Hi-Mount Land Company, by virtue of various conveyances. It was alleged that the covenants and restrictions complained of were contained in all of the deeds from said Hi-Mount Land Company down to and including the plaintiffs, and to the said Lucile Bunting and Ida May Bunting, and that said restrictions at the time of the institution of the suit were applicable and enforceable to said lots 12 and 13. The covenants and restrictions complained of, so far as involved on this appeal, are as follows:

"In order to secure the erection of private residence buildings of a high grade, insure uniformity and harmony in the character of such buildings and maintain the suitableness of the neighborhood for residential purposes only, and to carry out a general plan for the protection, benefit, use and convenience of each and every purchaser of a lot or lots in said Bunting Addition, and his heirs, and assigns, the said party of the second part, for his heirs, executors and administrators, does

covenant, promise and agree to and with the said first party and its successors as follows:

"(1) That no building shall be erected on said premises except a private dwelling house and outbuildings thereof, and no building erected thereon shall at any time be used except for such purposes.

\*     \*     \*     \*     \*     \*

"(5) That not more than one dwelling house shall be erected on one lot.

"(6) That no building except a boundary fence not more than two and a half feet high, made of materials and design to be approved by said party of the first part and its successors shall at any time be erected on said premises within twenty-five feet of the street upon which said lot fronts."

The covenants were made to run with the land, and the plaintiffs alleged in their original petition that on May 14, 1927, the defendants Lucile and Ida May Bunting, feme soles, executed and delivered to defendant J. R. Wattam, a contractor, a mechanic's lien contract for the erection and construction of a purported two-story brick veneer dwelling and frame garage according to plans and specifications upon said lot 13, that said plans and specifications provided for the construction of a two-story brick veneer duplex, containing two separate apartments upon said real property, and that the building was then under construction, and that the said building or duplex was in violation of the conditions, covenants, and restrictions above set forth.

Plaintiffs alleged that they relied upon said conditions, covenants, and restrictions in purchasing their homestead, then located on lot 12, the same being immediately adjacent to lot 13, owned by defendants.

It was further alleged that the defendants Lucile and Ida May Bunting had caused, and were causing, to be erected upon said lot, a building, the front wall of which was less than 25 feet from the property line upon the dedicated street in said block 1, and that the main body of said building was approximately 10 feet closer to the front property line than the main body of other houses erected on lots in said block 1, and that this was in violation of restriction No. 6, above set out.

It was further alleged upon information and belief that the building under construction on the defendants' property was to be a duplex consisting of two separate apartments, and that this was in violation of restriction No. 1; that the erection of said building or duplex and the use of same for duplex apartment purposes would greatly depreciate and irreparably injure, damage, and decrease the market value of the surrounding property.

It was further alleged that the defendants had violated, and were violating, restriction No. 5, above set out, prohibiting the erection of more than one dwelling house upon one

lot, in that it was averred upon information and belief that the building of the brick veneer duplex apartment contained two separate and distinct apartments, in direct violation of said restriction No. 5.

It was further alleged that the work had been started on said building upon lot 13 in block 1, and that the general outline of the building as then constructed would show that said building was to be a duplex apartment with one separate apartment on the lower floor and one separate apartment on the upper floor: that many lots in said block had been improved by their owners by the building of homes or private dwellings thereon, and that the construction of said building by the defendants would greatly depreciate and injure the market value of the surrounding property, particularly the adjoining property owned by plaintiffs, and that, if the building was completed, the damage to the plaintiffs would be increased, and plaintiffs prayed for a temporary injunction enjoining all of said defendants from proceeding with the erection and construction of the building or duplex; and further that a mandatory injunction be issued against the defendants, Lucile and Ida May Bunting, requiring them to remove the said building or duplex from said premises, or requiring them to conform with the covenants and restrictions above set forth, and restraining the said defendants from using said premises for duplex apartments, and, upon final hearing, that the said injunction be perpetuated.

The defendants pleaded a general demurrer and a general denial, and specially that the plaintiffs and defendants owned their said lots and property subject to the same restrictions and conditions as set out in the plaintiffs' petition; that the defendants had erected the said building on their lot in complete compliance with all said restrictions and conditions; they averred that the building which they erected on their lot was a two-story, brick veneer private dwelling; that it constituted and was one dwelling house, a private residence, or a private dwelling house, within the terms of the aforesaid restrictive covenant; that said building was not designed for use as a duplex apartment house or any other kind of an apartment house, but, on the contrary, was designed and was being used as a private residence.

Defendants further alleged that the plaintiffs had not suffered, and would not suffer, any damage from the use which defendants were making of their said property, but that, on the other hand, defendants had completed and finished their said residence, and would suffer irreparable damage and loss if they were enjoined and restrained from the use and enjoyment of their property, as plaintiffs were insisting; that said residence was located substantially within 25 feet of the street upon which the lot fronts, but that

since the suit was instituted, and after defendants had completed their residence, it was discovered that one corner of defendants' porch was 24.5, and the other corner was 24.8 feet from said street; that plaintiffs themselves had violated said 25 feet restriction, in that their porch roof line extended more than 3 feet beyond the front line of defendants' residence; and that by reason thereof plaintiffs were estopped from complaining of any violation by defendants of said restriction.

The defendants further specially denied that they have, or ever would, in any manner violate any of the covenants and restrictions in any respect, and prayed that plaintiffs take nothing by their suit, and that defendants recover their costs, etc.

On June 18, 1927, the defendants filed their motion to dissolve the temporary injunction which had been issued on the allegations contained in plaintiffs' original petition, and that day the court considered the motion, and, at the conclusion of the hearing, the injunction was dissolved in all respects save that part "whereby the defendants were enjoined from erecting on their property a house commonly known as a duplex or a house designed for use and occupancy by two families," upon said lot 13, block 1.

The plaintiffs excepted to this action and gave notice of appeal to this court, but the appeal was never perfected.

After the dissolution of the temporary writ of injunction as above recited, it appears that the defendants Lucile and Ida May Bunting procured the construction of the house as now involved, and a final hearing and trial was had, commencing on March 21, 1928. The issues as presented by the pleadings and evidence then before the court were presented to a jury. Those issues, together with the answers of the jury thereto, are as follows:

"1. Does the building in question, as it is now on said premises constitute a private dwelling house within the meaning of the above residence? Answer: Yes.

"2. Is the building in question now being used and occupied only as a private residence within the meaning of the above restriction? Answer: Yes.

"3. Is the building in controversy, as it is now erected an 'apartment house' as the term 'apartment house' is above defined? Answer: No.

"4. Is the building in question now being used and occupied as that it is an 'apartment house' as the term 'apartment house' is above defined? Answer: No.

"5. Are there other buildings in Buntings Addition to Hi-Mount in the immediate and surrounding vicinity or neighborhood of the defendants' house, which are constructed or divided into separate and distinct rooms or suites of rooms which constitute such building an 'apartment house' as the term 'apartment house' is above defined? Answer: Yes.

"6. Are there buildings situated in Buntings Addition to Hi-Mount in the immediate neighborhood or vicinity of defendants' house, which, from the manner of their use or occupancy, are 'apartment houses' as the term 'apartment house' is above used? Answer: Yes.

"7. If you have answered questions five and six in the negative, you need not answer this question, but if you have answered same in the affirmative, then you will answer this question: Were such buildings in said addition being used or occupied as an 'apartment house' as that term is above defined at the time the defendants erected the building in controversy? Answer: Yes.

"8. If you have answered questions five and six in the negative, you need not answer this question, but if you have answered same in the affirmative, then you will answer this question: Was the fact that buildings in Hi-Mount addition and in the immediate neighborhood of the house in controversy erected by defendants were 'apartment houses' as that term is above defined, generally known to the residents of such neighborhood and vicinity prior to the time that the defendants erected said building? Answer: Yes.

"9. If you have answered questions five and six in the negative, you need not answer this question, but if you have answered same in the affirmative, then you will answer this question: Was the fact that houses in the immediate neighborhood and vicinity of the house erected by defendants were being occupied and used as 'apartment houses' as that term is above defined, if you have found such to be the case, known to the plaintiffs prior to or at the time the defendants erected their said house? Answer: Yes."

Upon the answers of the jury thus appearing, the court entered judgment for the defendants Lucile and Ida May Bunting, dissolving the injunction in whole and for all costs. From this judgment the plaintiffs have appealed.

Appellees present a motion to dismiss the appeal predicated upon two grounds: (1) That the appeal bond does not comply with article 2265, Revised Statutes of 1925, in that it is not made payable in double the amount of the costs of the court below as fixed by the clerk; and (2) that, since the filing of the transcript on appeal in this case, to wit, on December 11, 1928, the appellants by deed dated March 22, 1929, a copy of which is attached to the motion, have conveyed to others named said lot 12 formerly owned by them. We think the motion to dismiss the appeal must be overruled. By article 1840, Rev. St. 1925, a defective bond may be amended, and appellants have applied for leave to file a corrected appeal bond, which we have granted. Moreover, since the enactment of the

statute permitting amendments of appeal bonds, the defect complained of here is not jurisdictional. See Hynes v. Packard, 92 Tex. 44, 45 S. W. 562; Williams v. Wiley, 96 Tex. 148, 71 S. W. 12; First State Bank & Trust Co. of Santa Anna v. Mann & Sons (Tex. Civ. App.) 209 S. W. 683; Newell v. Lafarelle (Tex. Civ. App.) 225 S. W. 853.

The motion was filed more than 30 days after the filing of the transcript in this case, and, not being jurisdictional, the defect complained of is waived, under rule 8 for the Courts of Civil Appeals, which requires that all motions relating to informalities in the manner of bringing a case into this court shall be presented "within thirty days after the filing of the transcript in the court of Civil Appeals, otherwise the objection shall be considered as waived, if it can be waived by the party." Edwards v. Mayes (Tex. Civ. App.) 136 S. W. 510; Farmers' State Bank of Newlin v. Bell (Tex. Civ. App.) 176 S. W. 922.

It is contended that the fact that appellants have conveyed the lot owned by them renders the questions presented on this appeal moot. The case of Cowell v. Andrewartha (Tex. Civ. App.) 293 S. W. 337, is cited in support of this contention. By reference to the case cited, it will be seen that, pending an appeal from an order enjoining the operation of a hospital for senile dementia patients in the city of Austin as a nuisance, title to property was vested in the Texas University under Acts of the Thirty-Ninth Legislature (1925) c. 182, because of which the court held that the subject-matter of the litigation had been disposed of by legislation, and that the questions accordingly were moot. We are not prepared, however, to hold that the interests of appellants have become so divested by the deed made by them as to deprive them of a hearing in this court.

From the deed attached to appellees' motion, it appears that Foster and wife, on March 27, 1929, conveyed lot 12, as stated, to R. M. Rowland and wife, Euphrates Rowland, for a total consideration of $6,300, of which $500 was paid in cash, the remainder being secured by promissory notes in stated sums, maturing at various dates, and secured by a vendor's lien on the property conveyed. The notes contained the usual acceleration of maturity clauses, and provided for the payment of 10 per cent. additional on both principal and interest then due in the event default is made in the payment of the same, and said notes are placed in the hands of an attorney for collection, etc. Such a conveyance under repeated decisions of our Supreme Court leaves the legal title in the grantors, and it is certainly true that lot 12 in question yet remains as security for the payment of a large amount of the purchase price for which the lot was sold. We think that violations of the building restrictions, of which appellants complain, if any, would have the effect of depreciating the value of appellants' security, and accordingly conclude that this ground of the motion to dismiss must also be overruled. We are thus brought to the consideration of the merits presented on this appeal.

While appellants' brief includes 17 assignments of error, the questions relied upon by appellants, and which we are called upon to determine, are presented in four propositions, which read as follows:

"Proposition No. 1. Where the building restrictions incorporated in the Warranty Deeds in issue do not mention 'apartment house,' it is error for the trial court to instruct the jury as to the definition of an 'apartment house,' and refer to said definition in seven of the nine special issues submitted to the jury, in a suit to enjoin the breach of the building restrictions contained in said deeds in evidence. (Assignment 2.)

"Proposition No. 2. Where one of the purposes of the building restrictions contained in the deeds offered in evidence was to secure the erection of 'a private dwelling house,' it was error for the trial court to define 'apartment house' a term not used in said deeds, and to refuse to define 'a private dwelling house,' the term used in said deed in his instructions to the jury. (Assignment 14.)

"Proposition No. 3. Where violation of building restrictions have not been permitted to such an extent as to evidence an abandonment of the plan, a grantee will not be prevented from objection to further violations by the fact that he has not objected to previous violations by others, particularly where such violations did not immediately affect the enjoyment of his premises. (Assignments 7, 8, 9, 10 and 11.)

"Proposition No. 4. The object of a building line restriction is to secure unobstructed light, air and vision for the lots for whose benefit the restriction is created, and to secure uniformity in the location of buildings with respect to the street line. (Assignments 3 and 10.)"

Rule 30, promulgated for the Courts of Civil Appeals, requires that an appellant on appeal shall make a statement of the case, and that "following the statement of the case there shall be stated consecutively separately subdivided and numbered, the propositions or points upon which the appeal is predicated. These shall be germane to one or more of the assignments of error or relate to fundamental error. The purpose of this rule is to enable counsel to state immediately and briefly, and without repetition, the questions in the case and to acquaint the court at once with the propositions presented for decision."

It is held that an assignment of error copied into briefs which is not followed by a proposition, supported by statements from the record, may be disregarded. Cooper v. Hiner, 91 Tex. 658, 45 S. W. 554; Randals v.

Pecos Valley State Bank (Tex. Civ. App.) 162 S. W. 1190. In our disposition of this case, therefore, we confine ourselves to the propositions presented.

■ The instruction of the court complained of in propositions 1 and 2 reads as follows:

"You are instructed that an 'apartment house,' as distinguished from a private dwelling house is a building which is so constructed as that it contains separate and distinct suites of rooms. A building run or conducted as an apartment house would be one in which distinct suites of rooms were constructed and occupied by one or more persons for residence purposes, the occupant or occupants of such suites of rooms having exclusive control and management of and dominion over the rooms so occupied."

In disposing of propositions 1 and 2, which are presented together, we first note that while the transcript contains a paper styled "plaintiffs' objections to court's charge to the jury," purporting to urge the exceptions referred to in propositions 1 and 2, we fail to find that the exceptions to the court's charge in the instrument referred to was ever prepared and presented and acted upon as provided by article 2185, Rev. St. 1925. This article, so far as pertinent, reads:

"The charge shall be in writing, signed by the judge, filed with the clerk, and shall be a part of the record of the cause. It shall be prepared after the evidence has been concluded and shall be submitted to the respective parties or their attorneys for inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived."

The purpose of the statute evidently is that the court, before finally submitting his charge to the jury, shall have his attention called to any objection thereto and an opportunity thus presented for correcting any omission or defect therein, and by the express terms of the article all objections not made as provided for "shall be considered as waived."

■ Moreover, appellants in their pleadings alleged that the defendants were violating restriction No. 1, which prohibited the erection of any building on the premises except "a private dwelling house and outbuildings thereon," by constructing a "duplex consisting of two separate apartments." Throughout their petition the allegations of appellants were to the effect that by constructing a duplex apartment house defendants had violated said restriction No. 1. The charge seems to have been founded upon the definition of an "apartment house," approved in the case of Austin v. Richardson, 288 S. W. 180, by the Commission of Appeals. There is no basis in either pleading or evidence for the conten-

tion that restriction No. 1 was violated by appellees except by the erection of a duplex or an apartment house, and, appellants having based their right to enjoin the construction of appellees' house upon the theory that the same was an apartment house, we cannot say the court's charge constitutes reversible error, particularly in view of the fact that the finding of the jury that the house was not a duplex or an apartment house implies a finding that it was a private residence, as indeed the jury so expressly found in answer to special issue No. 1.

By appropriate pleadings supported by sufficient evidence, appellees, among other things, urge that other apartment houses had been constructed and were used in the same block in which the lots in question are situated without objection on the part of plaintiffs, and hence that the restriction No. 1 complained of had been waived. This defense was supported by the findings of the jury, as will be seen by reference to the verdict. In the case of Loud v. Pendergast, 206 Mass. 122, 92 N. E. 40, the court had before it the question of a waiver or restrictive covenants because the original scheme had been so generally violated in the neighborhood as to make it unconscionable to enforce the restrictions against the defendants. This language is used in the opinion:

"Where there has been no uniform observance of the restrictions and substantially all the landowners have so conducted themselves as to indicate an abandonment of the right, which is in the nature of an easement, to have the neighborhood kept to the standard established by the original plan and where the enforcement of the restriction against the defendant will not tend materially to restore to the district the character impressed upon it by the scheme, and the infraction complained of does not diminish the value of other estates, then it would be inequitable and oppressive to compel at great loss a compliance with the restrictions."

Of like effect are the following cases cited by appellees: Clifton George Co. v. Great Southern Life Ins. Co. (Tex. Civ. App.) 234 S. W. 705; Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741, 28 Am. St. Rep. 584; Ewertsen v. Gertstenberg, 186 Ill. 344, 57 N. E. 1051, 51 L. R. A. 310; Johnson v. Poteet (Tex. Civ. App.) 279 S. W. 904; Pomeroy's Equity, p. 2596.

While a different conclusion may possibly be drawn from the opinion of our Supreme Court in the case of Curlee v. Walker, 112 Tex. 40, 244 S. W. 497, we think proposition No. 3 must be overruled at all events, in view of the supported finding that appellees' house as constructed is a private dwelling house. See Austin v. Richardson (Tex. Com. App.) 288 S. W. 180.

■ As to the remaining propositions, evidently abstract in form, we think it suf-

ficient to say that Brooks Baker, the witness in behalf of appellants, testified to the effect that he surveyed lot 13 in block 1 in the Bunting addition to Hi-Mount, and found that the front wall of the house was 24.5 feet from the front property line, and that no part was closer to the front property line than 24.5 feet; that he found Mr. Foster's (appellant) porch line to be 24.6 feet from the street line. Henry L. Dickson testified that he was the county surveyor, and originally laid out the Hi-Mount addition and ran the original line; that he measured the distance from and at the northwest corner of the house on lot 13, and it was 24.8 feet east of the west street front line—the east line of the street; that at the southwest corner it was 24.5 feet from the front street line; that from the front line of the porch of appellants' house it was 24.5 feet back from the street.

Regardless of the effect to be given to the maxim de minimis lex non curat, we think appellants are in no position to insist upon the drastic remedy of an abatement of appellees' house because it is approximately 6 inches less distant from the front street line than required by the restrictions in the deed. It is to be remembered that appellants' action is an equitable one, and one who seeks equity must do equity, and the authorities will sustain the proposition that one in like position may not complain of so small a departure. See Reardon v. Murphy, 163 Mass. 501, 40 N. E. 854; Ogontz Land & Improvement Co. v. Johnson, 168 Pa. 178, 31 A. 1009; Appeal of Acheson, 130 Pa. 633, 18 A. 873; Loud v. Pendergast, 206 Mass. 122, 92 N. E. 40; Scollard v. Normile, 181 Mass. 412, 63 N. E. 941.

The case seems to have been fairly tried, and we conclude that no reversible error in the proceedings has been shown by appellants' propositions. All assignments and propositions are accordingly overruled, and the judgment is affirmed.