## In re GRAFF et al.

### (Circuit Court of Appeals, Second Circuit. January 16, 1918.)

### No. 90.

1. BANKRUPTCY ⊙═372—REOPENING PROCEEDING—DISCRETION OF COURT.

   Under Bankruptcy Act July 1, 1898, c. 541, § 2, subd. 8, 30 Stat. 545 (Comp. St. 1916, § 9586), authorizing the court to reopen bankruptcy proceedings whenever it appears that they were closed before being fully administered, a motion to reopen is addressed to the sound discretion of the court.

2. BANKRUPTCY ⊙═372—REOPENING PROCEEDINGS—APPLICATION.

   Under Bankruptcy Act, § 2, subd. 8, an application to reopen proceedings should be made by the creditors, as the result of a reopening is the election of another trustee, a matter in which the creditors alone can act in the first instance at any rate.

3. BANKRUPTCY ⊙═372—REOPENING PROCEEDINGS—PETITION.

   Proceedings upon petition to reopen need not be of a technical nature, nor of any special formality; but there must be, not only a reasonable prospect of unadministered assets, but also evidence that creditors or other parties in interest, who would and should be benefited by its success, are making the application.

4. BANKRUPTCY ⊙═446—PETITION TO REVISE—SCOPE.

   Whether the trial court properly denied an application to reopen proceedings in bankruptcy is reviewable on petition to revise, which brings up only matters of law; for, as the application is one addressed to the sound discretion of the court, review by an appellate court is limited to considering whether there was an abuse.

5. BANKRUPTCY ⊙═372—REOPENING PROCEEDINGS—CREDITORS—EVIDENCE.

   On application to reopen proceedings, evidence *held* to warrant a finding that petitioner's testator was not a creditor, and hence an application was properly denied.

---

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. BANKRUPTCY ☜372—REOPENING PROCEEDINGS—AUTHORITY OF COURT.

 After an estate is closed and there is no longer a trustee, the power of the District Court in respect to the discharged trustee is exhausted, and an order directing the former trustee to execute an instrument validating the title of one of the bankrupts to property alleged to be newly discovered is invalid, being without the jurisdiction of the court.

Petition to Revise Order of the District Court of the United States for the Eastern District of New York.

In the matter of the bankruptcy of G. Edward Graff and Thomas F. Nevins, individually and as copartners composing the firm of G. Edward Graff & Co. On petition by the People's Trust Company, as executor of the estate of Edward Johnson, deceased, to reopen the estate. Petition to reopen being denied, and the former trustee being directed to execute a document validating the title of Nevins to property alleged to have been newly discovered (242 Fed. 577), the People's Trust Company petitions to revise. Order reversed, except as to portion denying the motion to reopen, and in that respect affirmed.

Petition to revise an order in bankruptcy entered in the District Court for the Eastern District of New York. Graff and Nevins became bankrupts in 1901. A trustee was elected, many claims were filed, and such proceedings were had that in 1903 the estate was closed and the trustee discharged, as were also the bankrupts themselves. The records of the court show that one Johnson, now deceased, and of whose last will the People's Trust Company is the executor, became (prior to the closing of the estate) the owner by assignment of every claim filed, except one for $12, which was paid in full. Subject to the fees of trustee, referee, and counsel, Johnson received all the cash and securities in the hands of the trustee. The value of the estate so delivered was not sufficient to pay in full the filed claims. This is the substance of the official history of this bankruptcy. There is nothing on file to show why or for what purpose Johnson bought up or otherwise acquired creditors' claims.

In 1916 the Trust Company, representing Johnson, and therefore as a creditor of the bankrupts, submitted a petition to reopen this estate, alleging the discovery of assets still in the hands of Nevins, one of the bankrupts, and which should have been scheduled in 1901 and turned over to the former trustee. Graff and Nevins were given notice of this proceeding and opposed it, and at the hearing the following facts appeared by affidavit or through documents which had never been filed in court:

The bankrupts had been engaged in a speculative venture with two other men, and some of the creditors thought that these other men might be held as partners of Graff and Nevins, and took or threatened proceedings to subject them to the petition in bankruptcy. Thereupon ensued negotiations between the bankrupts and their alleged partners, resulting in an agreement by which Johnson became the assignee of all claims as above set forth. He was the representative in the negotiations for settlement of the alleged partners, and, owing to lapse of time, deaths, and loss of papers it seems impossible to discover (nor is it thought material) just how much each creditor received, whether they all sold their claims upon the same terms, or whether the funds received ultimately by Johnson from the trustee in bankruptcy were sufficient to cover the amounts paid to the filing creditors. The alleged partners had themselves filed claims, which were of course invalid if they should be ultimately held as partners. One material fact, clear from the proof, is that, if Johnson was a creditor, he was so merely as the representative or agent of said alleged partners, and that, if there were any moneys left out

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the property received by Johnson from the trustee in bankruptcy over and above the payments made to creditors other than the alleged partners, all such excess was for the benefit of Johnson's principals.

Although exact figures are not and apparently cannot be shown, it is clear that Johnson's principals, regarded as creditors and not partners of Graff and Nevins, were never paid in full; but they agreed (and this agreement was carried out) that if they, through Johnson, received "all moneys or other things constituting the estates in bankruptcy of said (Graff and Nevins), both as individuals and as copartners, then (i. e., on discharge of the bankrupts) in the custody or control of the (bankruptcy) court or said trustee," they and Graff and Nevins would exchange mutual releases of all and every claim against each other. It is also clear that the trustee was to some extent at all events aware of this settlement or compromise out of court, for he turned over to the bankrupts certain land in Florida and jewelry of considerable value which had been scheduled as assets.

On these facts the District Judge denied the application to reopen, but in the order of denial further directed that the former trustee should execute a document validating the title of Nevins to the property alleged by the Trust Company as the ground or reason for reopening the estate. Thereupon the Trust Company took this petition.

Walter H. Merritt, of New York City (David W. Kahn, of New York City, of counsel), for petitioner.

Watson & Jameson, of Brooklyn, N. Y. (J. Herbert Watson and Michael M. Helfgott, both of Brooklyn, N. Y., of counsel), for Nevins.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge. [1, 2] The power of reopening estates depends upon section 2, subd. 8, of the Bankruptcy Act. The statute presupposes that estates have been closed, and authorizes the court to "reopen them whenever it appears that they were closed before being fully administered." We have held in Re Goldman, 129 Fed. 212, 63 C. C. A. 370, that a motion to reopen is "addressed to the sound discretion" of the District Court, and in the same case pointed out that such application should be made by creditors. This must follow from the fact that the result of a reopening is the election of another trustee—a matter in which creditors alone can act, in the first instance at all events.

[3] Proceedings upon petition to reopen need not be of a technical nature nor of any especial formality (Re Newton, 107 Fed. 431, 46 C. C. A. 399); but there must be not only a reasonable prospect of unadministered assets, but also evidence of creditors or other parties in interest making the application who would and should be benefited by its success.

[4] In this case the action of the lower court is, properly we think, sought to be reviewed by petition to revise; a procedure entitling us to correct its action only in matters of law. As the proceeding is in its nature discretionary, our power to review is limited to considering whether there was abuse of discretion.

[5] The error insisted on is that the order complained of prevented the creation of a new trustee who might raise the question in a plenary suit or otherwise, that Graff and Nevins, or one of them, had

overlooked, or been guilty of a fraud in concealing, what they or one of them now confessedly has, and so compel its surrender. But this right or duty of a new trustee can be created or invoked only at the instance of a party in interest, to wit (so far as this record shows), a creditor, and it is our opinion that there was, to say the least, ample evidence justifying the court below in finding that Johnson was not a creditor, and was not intended to be a creditor, of Graff or Nevins, after the interchange of mutual releases between the bankrupts and Johnson's principals.

We need express no opinion further than to hold there was evidence sustaining the holding complained of, viz. that Johnson was not a creditor. Therefore there was no abuse of discretion and no error in matter of law in denying the motion to reopen.

[6] In so far as the order complained of went beyond a denial of the motion to reopen, it was without jurisdiction. The estate was closed, there was no longer a trustee, and the power of the District Court in respect of the discharged trustee was exhausted. Cf. In re Hollins, 238 Fed. 787, 151 C. C. A. 637.

The order under review is reversed, except as to the portion thereof denying the motion to reopen; in that respect it is affirmed. There will be no costs in this court.