## LOOMIS v. BROADDUS & LEAVELL.

(Court of Civil Appeals of Texas. Jan. 25, 1911. Rehearing Denied Feb. 22, 1911.)

1. APPEAL AND ERROR (§ 916*) — PRESUMPTIONS—PLEADINGS—STATEMENT OF CAUSE OF ACTION—SUFFICIENCY.

Where plaintiff's statement of cause of action in a case originating in a justice's court is not incorporated in the record on appeal from the county court, the Court of Civil Appeals will assume that the pleadings, other than those appearing from the transcript, were oral, so that their sufficiency cannot be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3699–3705; Dec. Dig. § 916.*]

2. JUSTICES OF THE PEACE (§ 174*)—APPEAL—FURTHER PLEADINGS.

Where, in an action originating in a justice's court, the pleadings are oral, the parties may orally replead in the county court, and their pleadings need not be as full and specific as is required when a case originates in the county court.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 665–693; Dec. Dig. § 174.*]

3. APPEAL AND ERROR (§ 917*)—REVIEW—PRESUMPTIONS—PLEADINGS.

Where the facts developed on the trial in the county court on appeal from a justice's court disclosed a good cause of action, the court on further appeal from that court must presume in favor of the county court's ruling on a demurrer to the pleadings that such facts were pleaded by plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3706–3709; Dec. Dig. § 917.*]

4. BROKERS (§ 40*) — EMPLOYMENT — CONTRACTS.

A broker effecting a sale of real estate may not recover commissions therefor unless he had authority to act as agent in the matter.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 38–40; Dec. Dig. § 40.*]

5. BROKERS (§ 57*) — COMMISSIONS — WHEN EARNED.

Where the contract employing a broker to procure a purchaser, fixes the terms of sale, the broker, to recover commissions, must find a purchaser ready, willing, and able to purchase on such terms, unless he finds a buyer and introduces him to the owner and the buyer and the owner agree on terms of sale satisfactory to themselves, though differing from those on which the broker was authorized to sell, in which case he may recover the stipulated commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66–72; Dec. Dig. § 57.*]

6. CONTRACTS (§ 176*)—CONSTRUCTION—QUESTION FOR COURT.

The court must construe a contract reduced to writing, and hence an instruction containing a correct statement as to the meaning of a contract is not erroneous.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770, 1097; Dec. Dig. § 176.*]

7. BROKERS (§ 56*) — COMMISSIONS — WHEN EARNED.

Where a broker employed to procure a purchaser procured one who made a contract with the owner, the right of the broker to commissions was unaffected by any construction of the contract between the owner and purchaser or by the fact that enforcement against the owner would be inequitable because of a mutual mistake as to the number of acres forming the subject of the contract of sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 85–89; Dec. Dig. § 56.*]

Appeal from El Paso County Court; A. J. Eylar, Judge.

Action by H. W. Broaddus and another against Charles R. Loomis and another. From a judgment for plaintiffs against defendant named, he appeals. Affirmed.

---

Robt. T. Neill, for appellant. S. P. Weisiger, for appellees.

NEILL, J. This suit was originally brought in the justice court by H. W. Broaddus and Charles H. Leavell, composing the firm of Broaddus & Leavell, against Charles R. Loomis and John A. Rice to recover the sum of $175 as compensation or commission as real estate brokers for procuring a purchaser for them of two certain tracts of land listed by the plaintiffs for sale upon certain terms contained in the contract hereinafter referred to. The trial in the justice court resulted in a judgment in favor of the plaintiffs for the sum sued for, from which the defendants appealed to the county court. There upon a trial de novo judgment was rendered against plaintiffs in favor of Rice, and in their favor against Loomis for $175, with interest. From the judgment Loomis has appealed.

The pleadings of plaintiffs in the justice's court do not appear in the record before us, nor is the statement of their case in the county court shown other than as it may appear from such written pleadings of the several parties filed there. The defendants Loomis and Rice filed separate pleadings in the county court. What appellant styled his "Original Answer in the County Court" contained a general demurrer and denial and a special plea, which is, in substance:

That, acting for himself and his codefendant, John A. Rice, he made and entered into a contract with one Jasper Wooldridge, who claimed to be acting for and whom he supposed to be acting for plaintiffs Broaddus & Leavell, which is substantially as follows:

"El Paso, Tex. 2/29, 1908.

"Broaddus & Leavell—Dear Sir: I own an interest in lots, private survey, north of and adjoining surveys 9, 11, 14, Block B. San Elizario addition. * * * For 5 days from this date you are hereby authorized to sell for $27.50. $525.00 cash, balance assume in V. L. notes for $225.00 due about May 1908, $225.00 due about May 1909, balance of purchase price payable one year from delivery of deed. Interest at the rate of 8% per annum. $2.50 per acre com. payable out of first payment. You are given exclusive sale provided you advertise property at your own expense. * * *

"Remarks.—Can have all you get over $27.50 payable from payment of last note. Yours truly,

"Address: Loomis & Rice, by Loomis."

That it was thereby mutually agreed that said firm of Broaddus & Leavell were authorized to sell the property referred to in said contract for $27.50 per acre, $525 of which was to be paid in cash and the balance to be assumed in vendor's lien notes. That it was agreed and understood that out of said sum C. R. Loomis and John A. Rice were to receive net to them the sum of $25 for each acre of said land, and that Broaddus & Leavell were to receive no commission except out of such price as they might sell for that would be over the sum of $25 per acre.

That subsequently, said land having been surveyed, it was found to contain an aggregate of 67 acres. That Broaddus & Leavell did not comply with said contract, in that they never furnished defendants, or either of them, a purchaser ready, willing, and able to pay the sum of $27.50 per acre, or any sum that would net them $25 per acre. He also denied under oath the existence of any partnership between himself and his codefendant.

Rice pleaded precisely the same matters, and further answered under oath that he at no time gave C. R. Loomis any authority, either verbal or written, to extend the time for him with reference to the sale mentioned in said contract upon which plaintiffs base their suit for commissions for the alleged sale.

The plaintiffs, in what they styled their "Supplemental Petition," in replication to defendants' answers, alleged, in substance: That on February 29, 1908, defendants, acting through Chas. R. Loomis for himself and his codefendant, made and entered into an agreement for the sale of certain lands belonging to said defendants, a substantial copy of which is set out in their answers. That thereafter, and before the expiration of the five days mentioned in said memorandum, Chas. R. Loomis, acting for himself and with full knowledge of his codefendant, held himself out as being authorized to act for him, agreed with plaintiffs to extend the time in which the sale of said lands was to be made, and that, before the expiration of the time extended plaintiffs procured a purchaser for said lands who was ready, able, and willing to buy the same on terms acceptable to defendants and presented such prospective buyer to Charles R. Loomis, who acting for himself and his codefendant, with apparent authority to so act, and with full knowledge on the part of Rice that he (Loomis) had held and was holding himself out as authorized to act for him, entered into an agreement and contract for the sale of said lands with the purchaser so procured by plaintiffs, to wit, John L. Dyer of El Paso, Tex., and that said Loomis on March 7, 1908, acting as above alleged, made and entered into with said Dyer a contract in writing for the sale of the lands referred to in the memorandum set out in defendants' answers, which contract is substantially as follows: "March 7th, 1908. Rec'd of John L. Dyer the sum of fifty dollars, earnest money and part purchase of two tracts of land in El Paso county, Texas, adjoining block 'A' granted to Juan Lujan and I. Escajeda by Corp. of San Elizario, and said to contain 25 acres each, owned by Chas. R. Loomis & John A. Rice on the following terms: $525 cash, assume note of $225 due

May 3, 1908, and note of $675 due one year with int. at 8% payable semi annually, trade to be closed on or before Mar. 14th 1908 and deed to be general warranty executed by Loomis & Rice. Title to be approved by purchaser. [Signed] Chas. R. Loomis. John A. Rice, by Chas. R. Loomis. Survey and abstracts to be adjusted between purchaser and agents March 7, 1908. Accepted. Title is satisfactory and I request deed be delivered to me. [Signed] Jno. L. Dyer."

That the plaintiffs dealt with the defendant Chas. R. Loomis with the understanding that he was acting with authority and in the capacity in which he held himself out and represented himself to have, and, plaintiffs having dealt with him under such belief and understanding, Rice is estopped to deny such agency and authority on the part of his codefendant. That by reason of making and executing the contract of March 7, 1908, above mentioned, defendants became bound as therein stated, and that any prior agreements as to the terms of sale made by them was merged into said last-mentioned contract, and the same was the final consummation of their agreement for the sale of said land. That, if Chas. R. Loomis was not authorized to represent Rice in the sale of the land and in making said contract of sale, then he in so holding himself out as having such authority became obligated and liable to plaintiffs personally, and that they are entitled to recover of him individually the full amount of their commissions sued for. That the contract for the sale of the land finally agreed upon was not by the acre, but for a "lump" sum, as is shown by the contract above referred to. The supplemental petition also contained a general denial of the allegations contained in defendants' answers.

In reply, Loomis, by his first supplemental answer, alleged that he had agreed to the extension pleaded by plaintiffs, but that it was merely an extension of the existing contract made by him with plaintiffs, acting through Wooldridge, and that the price of the land was at all times to be based upon the number of acres, and that he and his codefendant were to receive $25 per acre net to them. He admitted signing the earnest money receipt set out in plaintiffs' supplemental petition, but averred that at the time both he and appellees understood that there were but 50 acres in the survey, but that a survey had subsequently been made and the acreage ascertained to be 67 acres, and that being advised to that effect, and still being willing to carry out his contract, he refused to convey unless the sum of $25 per acre should be paid to him and his codefendant; that prior to the survey both he and plaintiffs were laboring under a mutual mistake that the tracts contained but 50 acres, whereas they, in fact, contained 67; that it was not contemplated nor intended that either party to the sale should risk more than the usual rate of excess or deficiency in similar cases; and that it would be inequitable to compel him and Rice to convey. He also alleged that Dyer or plaintiffs should under the contract pleaded by appellants pay for the survey, but that neither did so. To the matters thus alleged in defendants' supplemental answer plaintiffs interposed a general demurrer and general denial. The demurrers of either party were overruled, and the case was tried before a jury, and upon the verdict judgment was rendered as above stated.

The first assignment of error complains of the court's refusal to peremptorily instruct a verdict for the defendants; the second, of its overruling appellant's general demurrer; and the third of the court's not peremptorily instructing a verdict for the defendants.

The plaintiffs' petition or statement of their cause of action not being incorporated in the record, it may be assumed that their pleadings other than appears from the transcript were oral. It has been held that the sufficiency of oral pleadings in a case originating in the justice court will not be reviewed on appeal, unless such pleadings, together with the objections interposed, and the rulings of the court thereon, are fully shown by bills of exception. Williams v. Deen, 5 Tex. Civ. App. 575, 24 S. W. 536. In such cases, though parties may replead in the county court, such pleadings may be oral, and are not required to be as full and specific as required when a case originates in the county court. Barnes v. Sparks, 131 S. W. 611; Threadgill v. Shaw, 130 S. W. 707. If, then, the facts developed on the trial, including such as were pleaded in writing, disclose a good cause of action, we must presume, in favor of the court's ruling on defendants' demurrer, that such matters were pleaded by the plaintiffs. While it is apparent that plaintiffs pleaded the written contract set up in defendants' answer for the purpose of showing their authority from them to effect a sale and as a basis for their compensation or commission, it is manifest that they relied upon a sale which was effected through their agency in procuring a purchaser ready, willing, and able to purchase the land upon terms agreed on by him (Dyer) and Loomis acting for himself and his codefendant. Without a contract creating such an agency, plaintiffs, to use the expressive language of appellant's counsel, "could not travel"; for, though a broker may effect or be the procuring cause of a sale, he cannot, unless he had authority to act as the agent of the owner in the matter, receive any commission or compensation from him. Fordtran v. Stowers, 113 S. W. 634; Mueller v. Bell, 117 S. W. 993. Hence it was essential to plaintiffs' recovery that they allege and prove such agency. And this, together with the object showing a basis for their compensation, we apprehend was their purpose of pleading the contract of February 2, 1908.

While, as a general proposition, where the contract of agency between the owner and the broker fixes the terms of sale, to entitle the latter to his commissions, he must find a purchaser ready, willing, and able to purchase upon the terms specified in such contract. But it is equally well settled that if, under such a contract of agency, the broker find a buyer and introduce him to the owner, and they agree upon terms of sale satisfactory to themselves, though differing from those upon which the broker was authorized to sell, he is entitled to his commissions as stipulated in the contract of his agency. Hamburger v. Thomas, 118 S. W. 770; Id. (Sup.) 126 S. W. 561; Hancock v. Stacy, 116 S. W. 180; McDonald v. Cabiness, 98 S. W. 943; Id., 100 Tex. 615, 102 S. W. 721.

Waiving the fact, as is shown by the evidence, that the plaintiffs did procure a purchaser in John L. Dyer who was ready, willing, and able to buy the land upon terms stipulated in their contract of agency, it clearly appears from the evidence that, after they procured such purchaser, they brought him and appellant together, and that they then agreed upon the contract of sale which is set out in plaintiffs' supplemental petition, which appellant afterwards failed and refused to perform. Hence a contract was procured through the agency of plaintiffs which either party thereto could have enforced specifically had appellant been authorized to extend the contract of agency for his codefendant as he assumed to do. This, under the authorities above cited, entitled them to recover their commissions as fixed by the contract of agency. See, also, Newton v. Dickson, 116 S. W. 143. We therefore overrule the three first assignments of error, and also the fourth.

In the sixth paragraph of its charge the court instructed the jury: "You are instructed that said earnest-money contract [referring to the one incorporated in plaintiffs' supplemental petition] is not a contract for the sale of land by the acre, but is a contract for the gross payment of a lump sum for said tracts of land." In this there was no error, for, the contract being in writing, it was the duty of the court to construe the same. E. P. & S. W. Ry. Co. v. Eichel, 130 S. W. 922. It was, however, in so far as it affected plaintiffs, immaterial what construction was placed upon such contract. They having brought the parties together, and they having made a contract in terms to suit themselves, its construction was a matter between defendants and Dyer, and was a matter of no concern to the appellees. As to whether there was such a mutual mistake as to the number of acres in the subject of the contract as would render its enforcement against the appellant inequitable was also a question between the parties to such contract, and, however determined, could not affect plaintiffs' right to recover the commission they earned by bringing the parties together and their then agreeing upon a contract of sale upon terms satisfactory to themselves. Plaintiffs did not make nor induce the parties to make the contract in the terms it was written, and are in no way responsible for its consequences. The same may be said in regard to Dyer's failure to pay for having the survey made.

In our view of the case the testimony of John L. Dyer, complained of in the seventh assignment, could have in no way prejudicially affected the appellant. Besides, as the court sustained his objection to it and excluded it from the consideration of the jury, it may be presumed that it did not affect the verdict.

There is no error in the judgment, and it is affirmed.