BROWNING v. DOWELL.   (No. 2172.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 5, 1919. Rehearing Denied Jan. 8, 1920.)

1. BROKERS 40—COMMISSIONS CANNOT BE RECOVERED IN THE ABSENCE OF EMPLOYMENT BY DEFENDANT.

A real estate broker is not entitled to commission as an agent, unless he has been employed as such by the person against whom the commission is claimed.

2. BROKERS 40 — EVIDENCE INSUFFICIENT TO SHOW THAT BROKER WAS RE-EMPLOYED TO SELL DEFENDANT'S FARM.

Where defendant had listed his farm with plaintiff, a broker, for sale, but had subsequently withdrawn it, that the broker thereafter met defendant while showing another farm to a customer, introduced the customer to defendant, stating that if the farm he was about to show did not suit him he would show him defendant's farm, the broker having asked defendant if his farm was still for sale, defendant replying in the affirmative and telling plaintiff to "bring him on," such facts were not sufficient to sustain a finding that he was re-employed; defendant having sold his farm to such customer following the conversation.

Appeal from Smith County Court; W. R. Castle, Judge.

Action by J. D. Dowell against B. M. Browning. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Johnson & Edwards, of Tyler, for appellant.

Simpson, Lasseter & Gentry, of Tyler, and E. A. Tharp, of Mineola, for appellee.

HODGES, J. Dowell, the appellee, sued and recovered a judgment against Browning, the appellant, for $300, claimed as commissions for selling a tract of land belonging to the latter. Dowell testified, in substance, that he resided at Mineola, and was engaged in the real estate business. In April, 1917, Browning listed with him a farm situated near Garden Valley in Smith county. Frequently thereafter Browning was in his office, and talked with him regarding the farm, and insisting that a sale be made; that Browning never at any time took the farm out of his hands. Some time in January, 1918, W. H. Williamson applied to the appellee to purchase a farm. Appellee, after showing him farms near Mineola, carried him to Garden Valley to see the Harper place. While on the way he told Williamson about Browning's farm, and stated that it could be purchased for $6,000. When they arrived at Garden Valley they went into a store and there found Browning. Williamson and Browning were introduced by the appellee, who then asked Browning if his farm was still for sale. The latter replied that it was. Appellee then said to Browning, "I am taking Mr. Williamson to look at the Harper farm, and if it does not suit him I will bring him back to look at his (Browning's) farm." Browning said, "Bring him on." Appellee then carried Williamson to examine the Harper farm. He then brought him on to Browning's farm, and Williamson and Browning inspected the land. Witness further testified:

"Soon after arriving home, Browning called me to one side and says, 'We have traded,' and asked me about the commission. I told him my commission would be 5 per cent. Browning said he would not pay the commission, but would give me $10. I refused to accept same. Later on, while we were there, Browning offered me $25, which I also refused. Later on, while Browning and Williamson were talking there in the yard, I went up to them and stated to them, 'If you men trade, I demand my commission.'"

The trade was concluded between Browning and Williamson, but Browning refused to pay the commission claimed. Browning testified that he had placed his land in the hands of the appellee for sale, but had later withdrawn it. He had no further communication with the appellee until in January, 1918, when they met at Garden Valley accidentally. Dowell at that meeting said to Williamson, "Mr. Browning here has a fine place that might suit you," and then asked him (Browning) if he would sell his place, to which he (Browning) replied, "Yes; I will sell any thing I have if I can get my price." Williamson then stated that they were going to look at another place, and if that did not suit they would return and look at Browning's place. Later in the day they did return. Dowell and the driver went into the house to a fire, and he and Williamson inspected the farm. They had about agreed

on a trade for a consideration of $6,000 when he (Browning) went into the house where Dowell was and told him they had about agreed, but before trading he wanted it understood that he was not to pay any commission on the sale. The appellee agreed to this, and stated that he would not expect any commission. The trade was then closed. The court submitted a general charge to the jury, and the following special charge, which is complained of:

"If you believe that the conversation of Dowell and Browning, if any, their conduct, if any, and the circumstances of the transaction show that Browning knew that the services of Dowell were offered for his benefit and were to be employed in his behalf and were being offered by Dowell with the expectation of receiving the usual commission for them, the acceptance by said Browning of such services will imply an agreement for the employment of the said Dowell and to pay him the usual commission therefor; and, if you so find, you will find for the plaintiff in the sum of $300."

[1, 2] This charge was objected to upon several grounds. We think, when applied to the facts of this case, it was misleading. Dowell is not entitled to a commission as an agent unless he had been employed as an agent by Browning. Under the evidence the jury might have found that the property had been taken out of the hands of Dowell some time before this transaction occurred, thus terminating his contract of employment. If that be true, the facts, even as detailed by Dowell himself, are insufficient to sustain a finding that he was re-employed on the day the sale to Williamson took place. Dunn v. Price, 87 Tex. 318, 28 S. W. 681. The appellee could not place the appellant, without his consent, in a position where the latter would not be free to sell his land to any prospective purchaser willing to buy upon his terms. If the agency of Dowell had previously been terminated, as claimed by Browning, what the former thereafter did in promoting the sale was purely voluntary. The mere fact that Browning was enabled to sell his land by reason of the services of Dowell was not sufficient to create the relation of principal and agent. We think the case should be reversed, and the cause remanded; and it is accordingly so ordered.