**LEE et al. v. WILSON et al.**

No. 4792.

Court of Civil Appeals of Texas. Texarkana.

Jan. 31, 1936.

Rehearing Denied Feb. 6, 1936.

der the five and ten-year statutes of the following described tract of land in Rusk county, Texas:

"Beginning at the N. W. corner of Block No. 24 being the N. E. corner of the W. A. Craven's land at or near the S. W. corner of Clark Lee's land a small Post Oak and Hickory for witness trees;

"Thence South 527 vrs. with the East line of the Craven's land to N. W. corner of a 46 acre tract contracted to Bud Jones, from which a Sweet Gum 12" dia. brs. S. 26' W. 3.2 vrs. a hickory 4 in. in dia. S. 2" E. 1½ vrs;

"Thence E. 484 vrs. to N. E. corner of said tract in old Carlisle and London road, a large Post Oak for witness tree;

"Thence N. 2 W. with said road about 40 or 50 vrs. to the top of the first hill on said road, or to where a line running South 10" W. from Clark Lee, S. E. corner will intersect said road;

"Thence N. 10" E. about 500 vrs. to the S. E. corner of said Clark Lee's land;

"Thence West with South line of Clark Lee's land 586 vrs. to the beginning, containing 51 acres more or less out of North West part of Block No. 24 of the F. Thorn subdivision of the Maria Josefa Prue One League Grant. * * *

"Although the defendants have no right, title or interest in said lands or the oil and gas mineral estate therein, since the discovery of oil in Rusk County near to and on this land, defendants have begun to assert claims to some interest in a portion of said 51-acre tract herein described relating to a claimed 59/100 acre tract bounded as follows:

"Being 59/100 acres more or less, out of the M. J. Pru Headright Survey and described as beginning at a point 1960 feet south of the N. E. corner of the Clark Lee 74.2 acre tract at a point in the East boundary line of the same, it being the S. E. corner of the Haynes Drilling Company's lease; Thence West 458 feet; Thence South 20 feet with fence; Thence Easterly and slightly south following the meanderings of Clark Lee's old fence to the center of the public road; Thence North 130 feet with the center of the public road to the place of beginning, out of the N. E. portion of said 51-acre tract. * * *"

Plaintiffs further alleged that the .59 acre last above described is a part of and included within their 51-acre tract first above de-

Robert B. Keenan, of Los Angeles, Cal., and Geo. E. Holland, of Beaumont, for appellants.

Phillips, Trammell, Chizum, Estes & Edwards, of Fort Worth, Smith & West, of Henderson, and Frank L. McClendon, of Tyler, for appellees.

JOHNSON, Chief Justice.

This suit was filed by appellees, Florence Blanche Wilson, independent executrix of estate of J. B. Wilson, deceased, and claimants of mineral interests under her, plaintiffs in the trial court, against appellants, the heirs of Clark Lee, deceased, and claimants of mineral interests under them, as defendants in the trial court.

Plaintiffs alleged that they are the owners "by purchase and chain of title from the state of Texas, as well as by limitation un-

scribed and that defendants have clouded plaintiffs' title by executing and placing of record various deeds and other instruments covering that portion of their 51-acre tract described as the 59/100 acre. Plaintiffs prayed for judgment canceling said instruments, removing cloud from and quieting their title to the 51-acre tract described, for general and special relief.

Defendants' answer contains a general denial, plea of not guilty. As to the .59 acre described in plaintiffs' petition, defendants alleged they are the owners thereof under the ten-year statute of limitation which they pleaded, and prayed that their title thereto be quieted, etc.

The cause was submitted upon three special issues, which, and the answers of the jury thereto, are as follows:

Special Issue No. 1: "Do you find 'from a preponderance of the evidence that the plaintiffs, and those under whom they claim, either in person, or through tenant or tenants, have had and held peaceable and adverse possession of the land in controversy, cultivating, using, or enjoying the same and paying all taxes thereon, and claiming under a deed or deeds duly registered for any five consecutive years prior to the date of June 28, 1933?"

Answer: "Yes."

Special Issue No. 2: "Do you find from a preponderance of the evidence that the plaintiffs, and those under whom they claim, either in person or through tenants, have had and held peaceable and adverse possession of the property in controversy, using, cultivating, or enjoying the same, for a period of ten consecutive years or more prior to the filing of the suit on June 28, 1933?"

Answer: "Yes."

Special Issue No. 3: "Do you find from a preponderance of the evidence that the defendants and those under whom they claim, have had and held peaceable and adverse possession of the property in controversy, using, cultivating, or enjoying the same for a period of ten consecutive years or more prior to the filing of the suit on June 28, 1933?"

Answer: "No."

The jury having answered the issues in favor of plaintiffs and against defendants, judgment was entered accordingly. From an order of the court overruling their motion for new trial, defendants have appealed.

The defendants have assigned as error the action of the trial court in failing and refusing to define and explain to the jury what was meant by the term "property in controversy" as that term was used in the court's charge. The defendants have properly raised the point by objections and exceptions to the court's charge and by a specially requested charge, all of which was timely made and overruled by the court, and to which defendants were given their bill of exceptions.

In point of pleadings as regards "the land in controversy" in the case, it will be noted that plaintiffs' petition alleges they own title to the 51-acre tract, which title, they allege, has been clouded, by reason of defendants' asserting claim to and executing and recording instruments covering the .59 acre alleged to be a part of the 51-acre tract. Plaintiffs' suit is to remove the alleged cloud from the title to the 51-acre tract of land.

Defendants by their general denial and plea of not guilty placed in controversy or issue, as regards the pleadings, plaintiffs' title to all the 51-acre tract described in plaintiffs' petition.

Defendants' affirmative plea of title to the .59 acre under the ten-year statute of limitation also placed in controversy or issue, as regards the pleadings, defendants' alleged title to said .59 acre, as separate and distinguished from the 51-acre tract.

In point of fact, as regards "the land in controversy," it is the contention of plaintiffs that the .59 acre exists only as a part and portion of the 51-acre tract, and that they have acquired title by limitation of the whole of the 51-acre tract. It will be noted that the plaintiffs' description of the .59 acre locates in north of "Clark Lee's old fence." In testimony it is contended by plaintiffs that the .59 acre is located in the northeast corner of the 51-acre tract and south of the Clark Lee land. Plaintiffs' description of the 51-acre tract places the 51-acre tract south of Clark Lee's land. Location of the 51-acre tract on the ground is dependent upon the location on the ground of Clark Lee's land. No deed or other instrument of title was introduced describing Clark Lee's land. The testimony of the witness W. A. Flint is to the effect that he surveyed the Clark Lee land in May, 1932, and in making the survey he located and ran the south line of the Clark Lee land; that he had with him at the time Clark Lee's deed; that he surveyed the .59 acre; that it was located south of Clark Lee's "deed line" (which would place

it within the 51-acre tract claimed by plaintiffs), but that it was north of Clark Lee's old fence (which would place it within the fence inclosing Clark Lee's land).

The testimony further shows that Clark Lee purchased his land about the year 1902; that it consists of approximately 74 acres; that Clark Lee completely inclosed his land with a wire fence in 1910, which inclosure included said .59 acre; that it so remained inclosed and occupied by Clark Lee and defendants claiming under him from 1910 to about September, 1932, when Clark Lee's south fence at the point in question was torn down and removed by parties unknown; that the .59 acre was so inclosed with, or as a part of, Clark Lee's land and occupied by him at the time J. B. Wilson (under whom plaintiffs claim title to the 51-acre tract) purchased the 51-acre tract from N. L. Marwil by deed dated November 1, 1918, which deed described the 51-acre tract as described in plaintiffs' petition. Wilson conveyed, under the same description, to Timothy Lee about seven days later, on November 7, 1918. Timothy Lee conveyed, under the same description, to Alva Lee on December 2, 1918. Alva Lee conveyed back to J. B. Wilson, under same description, on November 7, 1923.

 Plaintiffs' claim of title by limitation of five and ten years to the .59 acre rests in their claim that it is a part of the 51-acre tract and in showing constructive possession of the .59 acre by virtue of their occupancy of other portions of the 51-acre tract under said deeds describing the 51-acre tract, of which they claim the .59 acre is a part. The burden was upon plaintiffs to establish facts showing that they had acquired title to the 51-acre tract either under the five or the ten-year statute of limitation (Vernon's Ann.Civ.St. arts. 5509, 5510), and that the .59 acre was a part of the 51-acre tract. With respect to which issue of limitation "the land in controversy" was the 51-acre tract, and that term as used in the court's charge in submitting such issues of limitation (issues No. 1 and No. 2 above quoted) should have been so defined and explained to the jury.

 The burden was upon defendants to establish the affirmative of their issue claiming title under the ten-year statute of limitation to the .59 acre by actual occupancy, which issue (special issue No. 3 above quoted) was referable only to the .59 acre, being a part only of the "property in controversy," and the term should have been so defined and explained to the jury by the court so as to limit the term to the .59 acre to which the issue was referable. The issue (No. 3) as submitted, with the term "property in controversy" undefined and unlimited, required the jury, before they could give an affirmative answer thereto, to find that defendants' ten years' occupancy was of the whole 51-acre tract which was in controversy in the suit.

 The pleadings and facts in the case present an exception to the general rule that ordinarily it is not necessary to define the term "property in controversy" as the term is used in submitting to the jury issues of fact referable to pleas of limitation of land. Definitions of the term being unnecessary where the issues in which it is used are referable to all the land in controversy. Which is the case of the pattern form of the issue cited by the appellees, as given by Judge Speer in his book, "Law of Special Issues in Texas," pp. 787, 788, § 603. But in cases, as here, where the special issues submitted are not referable to the same or to all the same land, the title to which is in controversy, or in cases where the plaintiff or defendant may claim part of the land in controversy by conveyance or otherwise than by limitation and also claim other parts of the land in controversy by limitation, or in any other circumstances where the same may be necessary to avoid confusing the jury, the court in submitting the issues referable to the pleas of limitation should point out to the jury either in the body of the issue or in definition accompanying it the particular land to which the particular issue is referable. The office of the definition or explanation is that of an aid to the proper understanding of the issue, and the duty of the court with respect to their use is stated by Judge Speer as follows: "It is expressly made the duty of the court in submitting a case upon special issues to submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. The grammatical construction of this sentence in the statute is such perhaps that it covers literally only 'legal terms' in the requirement for explanations and definitions, but the wholesome preventive purpose of the statute is such as to forbid such narrow interpretation, and the better and accepted meaning is, that where necessary, the duty devolves upon the court to accompany the issues with such explanations and definitions as shall be necessary to enable the jury to perform its function of fact finding whether the defined word or ex-

plained term be strictly speaking a technical 'legal' term or such a nonlegal word or term as that its use in the charge might confuse or mislead the jury in the absence of a definition or explanation thereof." Speer, Special Issues in Texas, § 50, p. 58.

The judgment of the trial court will be reversed and the cause remanded.