KADANE et al. v. CLARK.

No. 13958.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 29, 1939.

Rehearing Denied Dec. 15, 1939.

Kilgore & Rogers, of Wichita Falls, for appellants.

Bonner, King, Dawson & Jones, of Wichita Falls, for appellee.

SPEER, Justice.

Plaintiff, C. W. Clark, instituted this suit against defendants, George E. Kadane, Jack Kadane, Mike E. Kadane, Edwin G. Kadane, Charles Kadane, Fred A. Kadane and Big Six Oil Company, a corporation, for $20,000, as commissions, and in the alternative for the reasonable value of his services rendered, in procuring a purchaser from defendants of an oil and gas leasehold interest in 200 acres of land in Wichita County, Texas.

Plaintiff alleged that he was a geologist by profession and had acquired a valuable knowledge of the formations which rendered defendants' property valuable. That he had never engaged in the brokerage business, but because of his knowledge of values, he conceived the idea of attempting to sell defendants' property to large oil companies, the personnel of which was well known to him. He asked George E. Kadane, whom he knew was in charge of selling the leases belonging to himself and his associates, if he would be interested in selling the properties to one or more of the several independent companies with whom plaintiff had contacts; that the said George E. Kadane said he would have to confer with other interested parties and

would do so at once; that he later told plaintiff that he and his associates were willing to sell, if prices and terms were acceptable. Allegations are made that defendants, acting through George E. Kadane, listed their said property with plaintiff for sale, and promised to pay five per cent of the amount of any sale made as commissions; in the alternative, that if no definite promise was made to pay five per cent of the purchase price for commissions, then they promised to pay a reasonable compensation to plaintiff for the services rendered by him, if such a sale was made, and that a reasonable compensation was five per cent of the purchase price for any sale made.

Plaintiff further alleged that after said property was so listed with him for sale, he interested the Sunray Oil Company in the proposition and caused representatives of that company and defendants to enter into negotiations, which resulted in the sale by defendants to Sunray Oil Company of said properties, for $400,000, one-half in cash and the other half to be paid from future oil runs produced from the properties. Further allegations were made that plaintiff procured a purchaser, to whom a sale was made, and that by his efforts he was the procuring cause of the sale made by defendants to Sunray Oil Company.

Defendants excepted specially to plaintiff's petition upon the ground that it disclosed a transaction between the parties, whereby plaintiff was seeking to enforce a contract which was in violation of The Securities Act of this State, and therefore invalid.

Subject to their general demurrer and special exceptions defendants answered by general denial, and by special pleas in defense, such as a denial of partnership, as alleged by plaintiff, that if any such contract as alleged by plaintiff was ever entered into (all of which they denied) that it was in violation of The Securities Act of Texas and void. Defendants further denied that they had ever listed their property with plaintiff for sale by him, and further specially denied that plaintiff was the procuring cause of the sale made by them to the Sunray Oil Company, but that said sale was procured through another person, to whom they had paid an agreed commission on the sale.

The general demurrer, all special exceptions and the plea in bar were overruled. The case was tried to a jury on special issues. The verdict was favorable to plaintiff. Motion for new trial was overruled and a joint and several judgment was entered in favor of plaintiff against all defendants, for $10,500. From the judgment entered defendants have perfected this appeal.

The parties will carry the same designation here as was given them in the trial court.

Defendants seek a reversal by this court on thirty-one propositions contained in their briefs. These points or propositions are admirably grouped and briefed in four classes. Some of the points presented are well taken and require a reversal of the judgment entered. We shall avoid, as far as possible, expressions as to the evidence which would give to either party an undue advantage upon another trial. Both sides have briefed the case thoroughly and these efforts on the part of counsel have been helpful to us in arriving at the conclusions reached.

In defendants' first group they present propositions one to six, under which they contend, (1) that the court erred in overruling the exception to the petition, because it did not allege that plaintiff had complied with The Securities Act; (2) because after plaintiff had stipulated upon the trial that he had not complied with The Securities Act, the court should have given a peremptory instruction for defendants; (3) because plaintiff having stipulated that he had not complied with The Securities Act and obtained a license, defendants were entitled to an instructed verdict and the court should have sustained their motion for judgment non obstante veredicto; (4) because plaintiff having failed to allege a compliance with The Securities Act, and having stipulated that he had not done so, the alleged contract attempted to be enforced was a violation of the Penal Code of this State, and the court erred in its enforcement; and (5) because it was error for the court to refuse to permit defendants to read to the jury the pleadings of plaintiff when he had not alleged a compliance with the Act and had so stipulated upon the trial.

There is no error shown by the action of the trial court in overruling defendants' special exception and plea in bar to plaintiff's petition, because it did not allege a compliance with The Securities Act. The petition stated a cause of action. The pleader was not required under the circum-

stances of this case to negative all possible defenses that might be presented or urged by his adversary. The matters so raised were defensive and could not be reached by exceptions. Culver v. Cockburn, Tex. Civ.App., 127 S.W.2d 328, writ of error dismissed, correct judgment; Mullin v. Nash-El Paso Motor Co., Tex.Civ.App., 250 S.W. 472, writ refused; R.C.L., vol. 4, page 303.

Subject to their special exceptions, defendants did plead the failure of plaintiff to comply with The Securities Act, alleging that by reason of his failure to so comply and procure a license, the purported contract relied upon by him with defendants was invalid and could not be enforced. There is a stipulation in the testimony adduced, to the effect that plaintiff had not qualified as a dealer in securities and procured a license under the provisions of The Securities Act. It is under this defensive plea and the agreed facts that defendants urge the propositions that plaintiff could in no event recover and that they should have had a summary instruction by the court and absent such instruction the court should have disregarded the verdict and sustained their motion for judgment non obstante veredicto.

These propositions fairly present the issue of whether or not the alleged express or implied contract between defendants and plaintiff, whereby the latter claimed that the former had employed him to find a purchaser of their oil and gas rights, was a violation of The Securities Act, Vernon's Ann. Penal Code, Article 1083a.

We have concluded that the facts in this regard (about which there is no controversy) do not bring the transaction within that statute. Vernon's Texas Civil Statutes, Article 600a and its 38 sections contain what is known as The Securities Act. Section 30 is the penal provision in it and is now Art. 1083a of our State Penal Code, Vernon's Ann.P.C. art. 1083a.

■ The Act evinces that the Legislature intended to protect the public against the purchase of worthless securities from unscrupulous dealers who peddle them about in search of buyers. Section 2 (a) of the Act, insofar as applicable to this case, defines the words "security" and "securities" in this language: "The term 'security' or 'securities' shall include * * any instrument representing any interest in or under an oil, gas or mining lease, fee or title.".

Section 2 (c) reads: "The term 'dealer' shall include every person * * * who engages in this State, either for all or part of his * * * time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or dealing in any other manner in any security or securities within this State."

Section 2 (h): "'Broker' shall mean dealer as herein defined."

Section 3: "Exempt transactions. Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act. * * *

"(c) Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities * * *".

Section 12 provides: "Except as provided in Section 3 of this Act, no person * * * or dealer shall, directly or through agents or salesmen, offer for sale, sell or make a sale of, any securities in this State without first being registered as in this Act provided. * * *"

■ In this case the defendants were indisputably co-owners of certain interests under oil and gas leases to the lands in controversy. It has many times been held by our courts that oil and gas in place are minerals, a part of the realty in, upon or under which they are situated. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Martin v. Dial, Tex.Com.App., 57 S.W.2d 75, 89 A.L.R. 571; Canon v. Scott, Tex. Civ.App., 217 S.W. 429; Hynson v. Gulf Production Co., Tex.Civ.App., 232 S.W. 873, writ refused. The same rules applicable to the conveyance of land are alike applicable to the conveyance of such minerals (oil and gas). Sibley v. Pickens, Tex.Civ. App., 273 S.W. 897; Lambert v. Gant, Tex. Civ.App., 290 S.W. 548; Honaker v. Guffey Petroleum Co., Tex.Civ.App., 294 S. W. 259, writ refused.

■ Plaintiff instituted and prosecuted this suit upon the theory that defend-

ants were the owners of the oil and gas rights in the land, and that they could sell or offer for sale those interests, either in their own behalf or through an agent employed to find them a purchaser at the price and upon the terms agreed upon. That either a sale by themselves directly to a purchaser, or by means of the assistance rendered by plaintiff in finding and producing a purchaser to whom they subsequently made a sale would not be an infraction of The Securities Act. We think the contention is correct.

It is only the sale or offering for sale of securities not excepted by which a dealer infringes the Act. Real estate is not a security within the contemplation of The Securities Act. 56 C.J. § 3, p. 1280. We find nothing in the Act to justify a presumption that the Legislature intended to require the owner of real estate to procure the license provided for in the Act before he could sell or offer for sale his own land or an interest therein. It is equally clear to us that the Legislature did not intend by the Act to prescribe that such owner could only invoke the assistance of one who was thus licensed to aid him in finding a purchaser for his landed estate. The person employed to procure a purchaser does not himself offer anything for sale. He is not in a position to make delivery of anything to one whom he finds desiring to purchase the interest in realty but is wholly dependent upon the owner to make a conveyance of an interest in land if, as and when the price and terms are agreed upon between the seller and proposed purchaser. A casual reading of Section 2(a) of the Act quoted in part above, which defines the words security and securities will disclose that it is only when any instrument representing any interest in or under an oil, gas or mining lease, fee or title, is sold, delivered or offered for sale or delivery by a dealer or broker (as defined in Section 2(c) that the Act is violated, unless such person shall have procured the license to perform such acts.

It is not contended in this case by either party that plaintiff sold, delivered, offered for sale or delivery any instrument representing an interest in or under an oil, gas or mining lease. It was not an "instrument", document or other evidence of debt or security therefor for which he claims he was employed to find a purchaser, but a part of the fee title to real estate owned in separate parts by defendants.

As a further evidence that The Securities Act herein discussed does not apply to sales of real estate, or to agents who claim compensation for procuring purchasers of real estate at the instance of the owner, the 46th Legislature, by House Bill No. 17, shown at page 888 of Vernon's Regular Session Acts, passed what is known as "The Real Estate Dealers License Act." Vernon's Ann.Civ.St. art. 6573a. By this Act, effective 90 days after adjournment of the Legislature, real estate dealers, brokers and agents are required, under the conditions named therein, to register with the proper authorities and procure a license as such dealer. The extensive details of the provisions of the Act need not be enumerated here, but the enactment of such a law is persuasive to our minds that it was not intended that The Securities Act should be applied to sales of real estate, nor to those acting as agents, brokers or commission-men in connection with such sales.

Moreover, if it be conceded that because of the language used in the Act at Section 2(a), that the property for which plaintiff sought a purchaser was a "security" and that plaintiff made or offered to make a sale, then we think the exception Section 3(c) quoted above would apply, for the Act does not cover sales of securities made by or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings. We overrule all propositions raising this question, and in this we are supported by the case of Culver v. Cockburn, Tex.Civ. App., 127 S.W.2d 328, writ dismissed, judgment correct.

We are cited by defendants to Atwood v. State, 135 Tex.Cr.R. 543, 121 S.W.2d 353, in support of their contention that since the stipulated facts are that plaintiff had not complied with The Securities Act, the agreement and contract claimed by him with defendants resulted in a violation of the Penal Code (Article 1083a) and was therefore unenforceable, even to concede that he procured the purchaser for the oil and gas interests of defendants. The facts involved in that case were, we think, materially different to those before us. In any event we think the court, in the Culver v. Cockburn case, supra, had a more nearly similar situation to the one here un-

der consideration, and held that the facts did not bring the case under the Securities Act. That decision having such sanction by the Supreme Court as the expression, "judgment correct", carries, and because the reasoning more nearly coincides with our views on the subject, we follow the rule there announced.

In their second group of propositions, defendants include numbers 7 to 19. These propositions cover complaints made of the manner of submitting the issues, and a failure to give definitions of certain words and terms used therein.

Omitting the preliminary statement made before the issues were propounded, those complained of and their answers are as follows:

"Issue No. 1. Do you find from a preponderance of the evidence that George E. Kadane listed for sale with plaintiff Clark the properties in question, which were sold to the Sunray Oil Company?" Answered, "Yes".

"If you have answered the foregoing issue 'No', then you need not answer this issue, but if you have answered the same 'yes', then answer:

"Issue No. 2. Do you find from a preponderance of the evidence that George E. Kadane had authority from all of the other owners of said property to list such property for sale with the plaintiff Clark?" Answered: "Yes."

"If you have answered the foregoing issue 'Yes', then you need not answer this issue, but if you have answered 'no', then answer:

"Issue No. 3. Do you find from a preponderance of the evidence that George E. Kadane had authority from any of the other owners to list such property for sale with the plaintiff Clark?" Not answered.

\* \* \* \* \* \*

"Issue No. 6. Do you find from a preponderance of the evidence that the plaintiff Clark did procure the purchaser for the property in question at a price and upon terms acceptable to the defendants?" Answered: "Yes."

\* \* \* \* \* \*

"If you have answered the foregoing issue No. 6 'No,' then you need not answer this issue, but if you have answered same 'yes', then answer:

"Issue No. 12. From a preponderance of the evidence, what sum of money, if any, if now paid in cash, do you find would be a reasonable compensation for the plaintiff Clark for such services, if any?" Answered: "$10,500."

The issues, the conditions under which they were to be answered, and the answers given, as quoted, will be sufficient to enable us to discuss the points raised by defendants.

The propositions here urged are, in effect, (1) that since defendants claimed they had not listed their property for sale with plaintiff, nor otherwise employed him to sell the same or to procure a purchaser for it, the dominant words "list" and "listed", used by the court in issues one, two and three, had a special legal significance and involved the point of whether or not they had employed plaintiff or invoked his aid to sell their property or to find them a purchaser for it at a price and upon terms acceptable to them; (b) that the use of the word "procure", as used in the sixth special issue, likewise was a technical term, well defined in law, which legal meaning was unknown to the jury; and (c) that because each and all of said special issues (including many not quoted by us) were preceded by the conditional provision (such as those above shown) were comments by the court upon the weight of the evidence, and informed the jury of the effect of their respective answers.

Plaintiff plead that defendants, acting through George E. Kadane, listed the property with him for sale. That they subsequently sold the property to the Sunray Oil Company, and that he, plaintiff, was the procuring cause of the sale, and that he procured the purchaser to whom the sale was made.

It is well settled by the courts of this State that before a broker can recover commissions from the seller he must not only show he was the efficient and procuring cause of the sale made, but that he had a contract, express or implied, to make such sale or procure a purchaser ready, able and willing to buy at the price and upon the terms stated. The general rule, as stated, is further clarified by holdings that the broker would be entitled to recover, where he procured for the seller a purchaser, and the seller accepted his services and made the sale with knowledge that the broker was expecting compensation if a sale should be made to his client.

A real estate agent, who brings parties together who make a trade, is not

entitled to commissions in the absence of a contract. Pipkin v. Horne, Tex.Civ. App., 68 S.W. 1000.

A broker cannot recover for services without showing a contract of employment, express or implied. Fordtran v. Stowers, 52 Tex.Civ.App. 226, 113 S.W. 631, writ refused; Loomis v. Broaddus & Leavell, Tex.Civ.App., 134 S.W. 743; Browning v. Dowell, Tex.Civ.App., 218 S.W. 45; Goode v. Sears, Tex.Civ.App., 226 S.W. 463.

Evidence that a broker presented to a landlord a tenant with whom a rental contract was made, will not support a judgment for commission in the absence of proof that the broker was employed to procure a tenant. Burgher & Co. v. Floore, 107 Tex. 112, 174 S.W. 819.

Simply to show that a broker is the efficient cause of the consummation of a sale does not show an agency to sell. Newell v. Lafarelle, Tex.Civ.App., 225 S. W. 853.

If a broker who has no contract with the owner to sell, undertakes to sell the property with the owner's knowledge, there is a sufficient consideration for the owner's promise to pay for the broker's services, when a purchaser is procured by the broker and a sale is made to him by the owner. Dockery v. Maple, Tex.Civ.App., 125 S. W. 631.

In Marr-Piper Co. v. Bullis, Tex.Com. App., 1 S.W.2d 572, it was held that whether the property had been previously listed with the broker or not, if the purchaser was voluntarily procured and presented by the broker and the owner negotiated a sale with him under circumstances which implied an agreement to pay therefor, the seller would be liable to the broker for commissions.

Under the rule stated, it becomes the paramount issue here whether or not plaintiff had a contract with defendants to sell their property. Plaintiff was content to allege, in this respect, that defendants had listed their property with him for sale. Such allegation, together with others shown to have been made, would carry the implication that a listing for sale meant that defendants employed him to sell their property, or to invoke his services to effect a sale of it. The words "list" and "listed", in many respects have simple meanings well understood, but when they are used to embody the elements of a contract, clearly they have a legal meaning;

that meaning must be understood by the jury to enable them to determine whether or not defendants listed their property with plaintiff for sale.

In Farquharson v. Lightner, 96 Kan. 117, 150 P. 565, it was held that the word "list" in testimony of a broker that defendant listed the land with him for sale, implies invoking the services of an agent in finding a purchaser on the terms stated.

Article 2189, R.C.S., provides, among other things, as follows: " * * * In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

The grammatical construction of the sentence above quoted from the statute, perhaps, would limit the necessity of explanations and definitions to "legal terms" used in the issue, but we cannot believe that such a limited or technical construction should be given it. Speer's Special Issues, § 50, page 58.

On this point we said, in Fort Worth Sand & Gravel Co. v. Peters, Tex.Civ. App., 103 S.W.2d 407, at page 414, writ dismissed: "When it is material to enable a jury to properly understand the language used in a given case, explanations are mandatory." We cited the case of Lee v. Wilson, Tex.Civ.App., 91 S.W.2d 461, writ refused, which held that explanations and definitions were necessary whether the words used in the issue were, strictly speaking, technically legal terms, or such nonlegal terms as were calculated to confuse and mislead the jury, in the absence of the required explanations and definitions.

In Robertson & Mueller v. Holden, Tex. Com.App., 1 S.W.2d 570, it was held that the statute had not attempted to declare what "legal terms" should be explained or defined, further than "shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." The court then laid down the rule in this language: "Reasonable necessity, considering the term or terms used, then, should be the test."

It is apparent in this case that a reasonable necessity existed for an explanation of the word "listed", as used in the three special issues above quoted. The record before us shows that after the jury had retired to consider of their verdict,

# 456

they wrote a note to the court saying: "Will you please define the word 'listed' as used in the first issue of your charge?" The court replied in writing: "The court can give you no further instruction with reference to such term."

Defendants timely objected and excepted to those issues which included the word "listed" because the word was not explained or defined, and requested the court to give the explanation necessary. The objections, exceptions and requests were overruled. The point was saved in the motion for new trial. The exceptions and requests were sufficient to entitle defendants to raise the point here as has been done, without preparing and presenting to the court a written explanation and definition. Robertson & Mueller v. Holden, supra; Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683. The assignments raising the question must be sustained.

■ Much that we have said in regard to the necessity for defining the words list and listed in Special Issues 1, 2 and 3 is also applicable to the word "procure", as used in special issue 6 and covered by the group of assignments here under consideration.

To enable the jury to properly understand the issue submitted, an explanation of what was meant by "procure" should have been given. By plaintiff's pleading he claimed a right of recovery because he procured the purchaser to whom defendants made the sale, and also in another way plead that he was the procuring cause of the sale made.

"Procure" has many meanings, as disclosed by the dictionary. Among other things it means "to bring into possession —to acquire; to cause—to bring about; to solicit—entreat."

By Issue No. 6, the jury was asked did plaintiff procure the purchaser to whom defendants sold the property. Absent a definition or explanation of the word procure, the jury was left to speculate as to whether plaintiff acquired something for himself, whether he brought something about, solicited or entreated the purchaser to make the deal.

"Procuring cause" finds a suggested explanation in Speer's Special Issues, § 571, in this language: "By 'procuring cause' as that term is used in this charge, is meant the moving, efficient cause without which

the sale in controversy would not have taken place." See, also, Dickinson v. Sanders, Tex.Civ.App., 39 S.W.2d 102; Keener v. Cleveland, Tex.Com.App., 250 S.W. 151; Cruz v. Perkins, Tex.Civ.App., 21 S.W.2d 1078, writ refused.

"Producing cause", used in connection with an issue in a suit to recover commissions under allegations similar to those in this case, was defined and approved by this court in Schebesta v. Stewart, Tex.Civ. App., 37 S.W.2d 781, 782, writ dismissed, in this language: "I instruct you that 'producing cause' as that term is used in this charge, means any act or series of acts set in motion, by the efforts of which, continuing in an unbroken chain of cause and effect from their inception, was produced the result or thing done." The assignment raising the point is sustained.

■ There is yet another point raised under the group of assignments under consideration. It is the complaint that the court erred in submitting the enumerated issues based upon a condition of how they had answered a preceding one, because it was upon the weight of testimony and informed the jury of the effect of their answers. The assignment, insofar as it applies to Special Issue 12, in which inquiry is made of the amount that should be awarded to plaintiff, is well taken. Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482; Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, writ refused. There are many decisions of our courts holding that it does not present reversible error for the trial court to submit certain issues to be answered, conditioned upon how others were answered, provided such condition does not have the effect of apprising the jury of the effect their answers will have upon the judgment to be rendered by the court. In a strict sense, a juror knows when such a condition precedes an issue, that if the other issue has been answered in a certain way the one subsequently propounded becomes immaterial. Such procedure is conducive to a speedy determination of the rights of litigants, and it is to be commended. Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, writ refused, and authorities there cited. But when, as in this case, the Grasso and Barnes cases, supra, where the amount of the recovery, if any, is submitted, there is no necessity of a conditional submission of the issue, thereby hazarding the danger

of apprising the jury of the effect of their answer on a previous question. This is true for the reason, irrespective of how much or little is found in the issue of amount, the answers to issues of liability will control the court in entering the judgment.

There are other points raised in this group of assignments, such as that Issue No. 6 (above quoted) was duplicitous and multifarious. In the circumstances of this case, where a sale was actually made by the seller to the purchaser alleged to have been procured by the broker, the additional provisions in the issue become immaterial. It was held in Granata v. Mothner, Tex.Civ.App., 44 S.W.2d 817, 819, that an issue very similar to the one under consideration was open to the objection here made. But in that case the broker sought a recovery for having procured a purchaser "ready, willing and able to purchase * * * upon the terms proposed", and the seller declined to make the sale. The distinguishing features between that and this case are apparent.

Again, objection was made to the manner in which Issue 12 is framed, with respect to reasonable compensation for the services performed by plaintiff, if any, without limiting such compensation to the value of services rendered in the particular transaction in question. If the conditional submission as made by the court of that issue had been proper, then Issue 12 would have been correct, for it was referable to the manner in which Issue 6 had been answered. But we have said the conditional submission of the issue was improper, and therefore upon another trial plaintiff's compensation should be limited to the value of his services for having become the efficient and procuring cause (if they were) of the sale that was made.

Defendant's third group of propositions cover numbers 20 to 24. In them complaint is made that the court erred in overruling their motion for judgment non obstante veredicto. We have already indicated that no summary instruction should have been given for defendants and it must follow that no error is shown in overruling the motion. However, by their 19th proposition, defendants insist that there was no evidence to warrant the submission of Special Issue 2, above quoted, and no evidence to support the answer made. It will be noted that the issue referred to is one in which inquiry was made if all the owners of the land authorized George E. Kadane to list same with plaintiff for sale; which issue was answered in the affirmative.

The record reflects that the 200 acres in controversy was owned by the defendants and one Griffith, who was not a party to the suit. Each owned in his own right a definite undivided proportionate part. Defendant, George E. Kadane, is the father of defendants, Edward Kadane, Michael Kadane and Jack Kadane. The father and each of the sons owned a 5/48th interest. Big Six Oil Company, controlled by Fred Kadane, a brother of George E. Kadane, owned 12/48th interest and Griffith owned 16/48ths interest in 120 acres of the land. Big Six Oil Company owned 1/2 interest and George E., Edward, Michael and Jack Kadane each owned a 1/8th interest in the remaining 80 acres.

The testimony offered is conflicting in a very high degree. That relied upon by plaintiff is made up from circumstances, which he admits are badly "scrambled." The recorded testimony from which these circumstances are enumerated covers a large volume; in plaintiff's briefs these circumstances are picked out and the record supporting them is cited; we have verified the citations and cannot say there is no testimony of probative force upon which to base the submission of the issue. The jury, as was its province, gave credence to those circumstantial acts and statements done and testified to by the witnesses, resulting in the affirmative answer given. With the burden upon plaintiff to establish a material fact by a preponderance of the evidence, other than one such as fraud or agency, we would be slow to say that the evidence such as in this case was sufficient; but in the circumstances of this case where agency of George Kadane to list the property for sale with plaintiff was solely within the knowledge of his principals, consisting of his three sons and brother, all of whom were adversely interested parties, and some did not testify and others who did testify, either did not deny the agency or were very evasive in that respect, we think slight circumstances developed by plaintiff would, in law, discharge the burden resting upon him, and warrant the submission of the issue to the jury.

458

This rule is recognized in 3 C.J.S., Agency, § 315, page 253, in this language: "It is said that very slight proof by plaintiff is sufficient to raise a presumption of agency where full knowledge of the subject is possessed by defendant and is difficult of attainment by plaintiff." It is further said in the same text, § 328, at page 299: "Also, it has been held that, where neither the alleged principal nor the alleged agent testify in an action by a third person against the alleged principal, a slight prima facie case is sufficient to satisfy legal requirements touching the burden of proof."

A similar rule to that above prevails in this State. In Daugherty v. Wiles, Tex. Com.App., 207 S.W. 900, it was held that agency may be established by circumstances such as the relation of the parties and their conduct with reference to the subject matter of the alleged contract. A further well known rule of law is also announced in that case to the effect that agency cannot be established alone by the words and acts of the alleged agent, unless it is further made to appear that the principal knew of or assented to them; but where the acts justified a reasonable inference that the principal had such knowledge and would not have permitted them if unauthorized, the acts are competent and may be proved.

 Whether or not the relationship of principal and agent exists between two or more parties, and the extent of such agency, if any, is best known to the parties themselves. Agency cannot be proved by the words and acts alone of the agent, hence when the principal remains quiet and declines to testify when such agency and its extent are at issue, the silence of the alleged principal not only strengthens the probative force of the affirmative truth, but of itself is clothed with certain probative force. Farmers' Guaranty State Bank v. Burrus Mill & Elevator Co., Tex.Civ.App., 207 S.W. 400; Pullman Palace-Car Co. v. Nelson, 22 Tex.Civ.App. 223, 54 S.W. 624; Bailey v. Hicks, 16 Tex. 222. Many more authorities could be cited from the early decisions, but we think those mentioned are sufficient. The assignment must be overruled.

Group four of propositions by defendants embrace several assignments of error to the judgment as rendered, it being joint and several against all defendants for $10,500. This was manifestly wrong. True plaintiff alleged a partnership between defendants in the matters involved. This was denied under oath by defendants, which made a material issue for determination before a joint judgment could be rendered against all. No issue was requested or submitted inquiring whether or not defendants were partners. The record reflects that defendants owned the land, which plaintiff claims to have caused to be sold, in the proportions above shown. To concede that they each authorized George Kadane to list his and its land for sale as found by the jury, this would not render each liable to the broker for commissions on all. To do so would be manifestly unfair and inequitable, if perchance one or more of the defendants was insolvent and no contribution could be enforced between them. Those who were solvent would be required to pay more than their proportionate part, based upon the interest in the whole owned by them. The judgment should have apportioned the recovery against each defendant in the proportion that his interest in the land bore to the gross amount of the verdict rendered. If A and B, owning adjacent lands, each employ C to sell their respective tracts, a sale of both tracts is made and a commission earned, manifestly each of the sellers would alone be responsible to the broker for commissions for selling his land; neither of the sellers would be liable for commissions for the sale of the land belonging to the other. We sustain the assignments of error raising the point.

We have endeavored, in this discussion, to refrain as far as possible from commenting at length upon some phases of the case because it must again be tried upon the facts and law applicable. But assuming that the same or similar issues will arise upon another trial, we have expressed our views upon the points presented in a way that we trust will be helpful to the trial court upon another hearing. We have considered all assignments of error and those not herein sustained are overruled.

For the reasons shown, the judgment of the trial court must be reversed and the cause remanded for another trial. It is so ordered.

## On Motion for Rehearing.

All parties, plaintiff and defendants, have filed motions for rehearing in this cause. Defendants (appellants) assign as error our conclusions wherein we overruled many of their assignments of error, and that even though we had held that a definition should have been given of the term "procure" yet some of the decisions cited by us did not include all of the elements that should enter into a proper definition of that term in the charge. We think and so hold that a definition of the term should embrace, in some suitable form, all that is contained in the charge given in Dickinson v. Sanders, Tex.Civ.App., 39 S.W.2d 102, and Settegast v. Timmins, Tex.Civ.App., 6 S.W.2d 425, writ refused.

Plaintiff (appellee) complains because of our holding that it was error for the trial court to enter a joint and several judgment against defendants. We have reached the conclusion that his contention is correct, and that we were in error in our holdings as expressed in the original opinion on this point. We sustained defendants' assignments grouped by them as "No. IV" which raised the question.

In Settegast v. Timmins, supra, three parties consisting of one who owned an undivided half interest in real estate, and a husband and wife who owned the other half entered into a contract with brokers to sell their joint property. No express agreement was made as to the amount of commissions to be paid. There was no agreement between the parties at the time the contract was made that their liabilities should be segregated. It was held that a joint and several judgment was proper. Keithley v. Ward, Tex.Civ.App., 217 S.W. 428; Gillespie v. Dick, Tex.Civ.App., 111 S.W. 664.

In Danciger v. Smith, Tex.Civ.App., 286 S.W. 633, affirmed by Supreme Court, 116 Tex. 269, 289 S.W. 679, a joint and several judgment against several joint owners for commissions by a broker was complained of. It was contended that because it was not shown that the joint owners were partners that the judgment should have been prorated among them in the proportion of their ownership. It was held that since they dealt with the broker jointly and did not disclose to him their respective interests, the joint and several judgment was proper. To the same effect is the case of Morrison v. Reece, Tex.Civ.App., 266 S.W. 815, which cites Baum v. McAfee, Tex.Civ.App., 125 S.W. 984; Babcock v. Glover, Tex.Civ.App., 174 S.W. 710, writ refused. The last cited case was one in which the husband procured the services of a broker to sell a large tract of land which belonged to him and his wife jointly. Both were sued but because of the wife's coverture she was dismissed from the suit. It was held that the husband was liable for the whole commission. That case may be distinguished in some respects from this case, but the reasoning of the court is similar to that in the other cases cited.

We therefore withdraw that part of our original opinion wherein we sustained defendant's assignments complaining of the joint and several judgment, and here hold that when it is made to appear by proper findings of fact that defendants acting jointly either in person or by a common agent with authority to act in the premises employ the broker to procure for them a purchaser of their property, and the broker complies with his contract and earns a commission, judgment in his favor should be joint and several against those who employ him, or with knowledge of employment ratify same.

It follows from what we have said that we overrule defendants' assignments of error which challenge the judgment because it was joint and several. In all other respects than those mentioned in these conclusions we believe we have properly disposed of this appeal. With these changes the former order of reversing and remanding the cause for the errors shown will stand and both motions for rehearing are overruled.